DOMENIC STORNANTI vs. COMMONWEALTH.

Suffolk. January 3, 1983. — June 20, 1983.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

Contempt. Practice, Criminal, Subpoena duces tecum. Constitutional
    Law, Self-incrimination. Pharmacy. Medicaid.

Records required pursuant to Federal and State statutes to be maintained
    by a pharmacy respecting services provided to individuals under the
    Medicaid program are within the scope of those Federal judicial deci-
    sions which recognize a "required records" exception to the privilege
    against self-incrimination guaranteed by the Fifth Amendment to the
    United States Constitution, and thus the president of the closely-held
    corporation which operated a pharmacy could not successfully claim
    this privilege in refusing to comply with a subpoena duces tecum
    issued on behalf of a grand jury. [521-525]
The president of a closely-held corporation which, as operator of a phar-
    macy, voluntarily participated in the Medicaid program could not
    successfully claim the privilege against self-incrimination guaranteed
    by art. 12 of the Massachusetts Declaration of Rights with respect to
    records which Federal and State statutes required the pharmacy to
    maintain in order to secure Medicaid reimbursements. [526-527]

        .

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 2, 1982.

A proceeding for contempt was heard by Morse, J.

The Supreme Judicial Court granted a request for direct
appellate review.

Jeffrey M. Smith for the plaintiff.

Paul Cirel, Assistant Attorney General (Kenneth T.
Bowden, II, Assistant Attorney General, with him) for the
Commonwealth.

ABRAMS, J. Domenic Stornanti, president of Birch Drug
Co., Inc., a pharmacy, appeals from an order of the

Superior Court, holding him in civil contempt of court[1] for refusing to comply with a subpoena duces tecum issued by the Medicaid fraud control unit of the office of the Attorney General on behalf of a special grand jury for Suffolk County. See G. L. c. 277, §§ 2A, 68. See also Mass. R. Crim. P. 17 (a) (2), 378 Mass. 885 (1979). The subpoena ordered Stornanti to produce all Birch Drug's records in his possession or control relating to the pharmacy's provision of brand name and generic drugs and medical supplies to individuals receiving benefits under the Medicaid program in 1980 and 1981. Stornanti refused to comply with the subpoena and the Superior Court judge found him to be in civil contempt. We granted Stornanti's application for direct appellate review. We affirm the finding of civil contempt.

We summarize the facts. Stornanti is president, sole pharmacist, and a director of Birch Drug. The judge apparently concluded that Birch Drug is a closely-held corporation.[2] Stornanti does not challenge this finding on appeal, nor did he challenge it in his motion to quash the subpoena. Birch Drug is a provider of prescription drugs to Medicaid recipients. Consequently, Birch Drug is required "to keep such records as are necessary fully to disclose the extent of the services provided to individuals receiving assistance

---

[1] The judge committed Stornanti to jail "until such time as he produces the subpoenaed records or until the expiration of . . . any extended term of the Grand Jury," but stayed execution of the sentence pending appeal. The judge reported to the Appeals Court the question whether "Article 12 of the Declaration of Rights of the Massachusetts Constitution protect[s] Stornanti from furnishing the records of Birch Drug Company, Inc., of which he is the president and which production is reasonably likely to incriminate him?" See G. L. c. 211A, § 10; Mass. R. Crim. P. 34, 378 Mass. 905 (1979).

[2] The record reveals that Birch Drug had a total of 100 shares of no par value common stock outstanding at the close of fiscal year 1981. The three officers of Birch Drug are its only directors. The judge stated that Stornanti is the chief officer of the corporation, which he then referred to as a "proprietorship." In his brief, Stornanti asserts that the judge "appeared to accept that Birch Drug Co., Inc., was a closely-held corporation." See, e.g., *Donahue* v. *Rodd Electrotype Co.*, 367 Mass. 578, 585-588 (1975).

under the State plan." 42 U.S.C. § 1396a(a)(27)(A) (1976 &
Supp. V 1981). G. L. c. 118E, §§ 18-20.

Stornanti was served with the subpoena in his capacity as
president of Birch Drug. The day before Stornanti was to
appear and produce his records to the grand jury, he moved
in Superior Court to quash the subpoena.[3]

In his motion and accompanying brief, Stornanti ac-
knowledged that he had the requested records. His motion
was denied and Stornanti appeared before the grand jury.
He refused to produce the records on the grounds that the
subpoena violated his rights under the Fifth and Fourteenth
Amendments to the United States Constitution, and art. 12
of the Massachusetts Declaration of Rights.

When Stornanti refused to comply with the subpoena,
the Commonwealth petitioned the Superior Court to hold
Stornanti in civil contempt of court. After the hearing on
the Commonwealth's motion, the judge found that Stornan-
ti was the custodian of Birch Drug's records, and that he
had the ability to comply with the subpoena.[4] Further, the
judge found that Stornanti had no privilege under either the
United States or the Massachusetts Constitution entitling

[3] In his motion, Stornanti asserted that compliance with the subpoena
would be unduly burdensome, would violate Federal and State laws man-
dating that a pharmacy keep prescriptions on file, and would require in-
spection of the prescriptions in a manner not in conformity with the provi-
sions of G. L. c. 94C, § 23. See also G. L. c. 94C, § 30. He also alleged
that if he relinquished his Medicaid clients' prescriptions, no pharmacy
could meet their needs for medication. Finally, he argued that, in the
absence of a grant of immunity, compliance with the subpoena would
violate his rights under both Federal and State Constitutions.

[4] On appeal, Stornanti claims that he could not have been required to
comply with the subpoena because the evidence presented at the hearing
failed to show that he was the custodian of Birch Drug's records. How-
ever, Stornanti acknowledged that he was the custodian of the records in
his motion to quash the subpoena. Moreover, there was sufficient
evidence to support the conclusion reached by the judge that Stornanti
was the custodian of Birch Drug's records. Thus, Stornanti's claim is
without merit. Cf. *Commonwealth* v. *Kreplick,* 379 Mass. 494, 497-498
(1980). Furthermore, since Stornanti did not raise this issue below, we
decline to consider it on appeal. See *International Fidelity Ins. Co.* v.
*Wilson,* 387 Mass. 841, 851 (1983).

him to withhold the requested records, and held him in civil contempt of court for his refusal to comply with the subpoena.

On appeal, Stornanti contends that he was improperly ordered to produce the subpoenaed records, because the "required records" exception to the privilege against self-incrimination guaranteed by the Fifth Amendment is inapplicable to art. 12. Contrary to Stornanti's contention, we conclude that the required records exception does apply to art. 12. Since in the circumstances of the case the required records exception is dispositive of Stornanti's assertion of a privilege against self-incrimination under both the State and Federal Constitutions, we do not reach any other constitutional issues raised by Stornanti.[5]

Birch Drug, as a Medicaid provider, is required by both Federal and State law to maintain the records that Stornanti was ordered to produce. 42 U.S.C. § 1396a(a)(27)(A) (1976 & Supp. V 1981). G. L. c. 118E, §§ 18-20. "Required records" are those "records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation and the enforcement of restrictions validly established." *Shapiro v. United States*, 335 U.S. 1, 17 (1948), quoting *Davis v. United States*, 328 U.S. 582, 590 (1946).[6]

The required records exception applies when three requirements are met: "[F]irst, the purposes of [the State's] inquiry must be essentially regulatory; second, information is to be obtained by requiring the preservation of records of a kind which the regulated party has customarily kept; and

---

[5] Before the grand jury, Stornanti claimed that the subpoena also violated his rights under the First, Fourth, Sixth and Ninth Amendments to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. As Stornanti has not argued or briefed these issues, they are deemed waived. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975).

[6] On appeal, Stornanti also claims that some of the records are not required records as defined, and were included improperly in the subpoena. Stornanti did not raise that issue below, and therefore it is not before us. See *Royal Indem. Co. v. Blakely*, 372 Mass. 86, 89 (1977).

third, the records themselves must have assumed 'public aspects' which render them at least analogous to public documents." *Grosso* v. *United States*, 390 U.S. 62, 67-68 (1968).

There is no question that the records which Stornanti has been ordered to produce meet these requirements. The Medicaid fraud control unit's investigation is regulatory, for it is "concerned with regulating the state's medicaid program." *In re Morris Thrift Pharmacy*, 397 So. 2d 1301, 1304 (La. 1981). The Medicaid fraud control unit "conducts the investigation, in part, by invoking the powers of the grand jury." *In re Grand Jury Investigation*, 441 A.2d 525, 531 (R.I. 1982). The Medicaid record keeping requirements are used to "monitor the operation of the Medicaid program, not to catch criminals." *People* v. *Herbert*, 108 Ill. App. 3d 143, 148 (1982), cert. denied, 459 U.S. 1204 (1983). The fact that Stornanti's records are sought by a grand jury investigating him does not change the regulatory purposes of the record keeping requirements.[7] See *id.*

There is also no question that Stornanti customarily keeps the records he was ordered to produce. Birch Drug, as an approved Medicaid provider, is required by both Federal and State laws and regulations to maintain records of the type requested by subpoena in this case for audit and inspection. See, e.g., 42 U.S.C. § 1396a(a)(27) (1976 & Supp. V

---

[7] Stornanti's reliance on *Marchetti* v. *United States*, 390 U.S. 39 (1968), is misplaced. In *Marchetti*, the United States Supreme Court invalidated wagering reporting requirements which the United States government attempted to justify pursuant to the required records exception. The statute at issue in *Marchetti* was "designed to require the confession of a crime. The documents involved here have no relevance to the revelation of criminal conduct. At the time they were filed [or kept] they did not incriminate." *United States* v. *Silverman*, 449 F.2d 1341, 1345-1346 (2d Cir. 1971), cert. denied, 405 U.S. 918 (1972). Moreover, "[w]e cannot say that the class of all [pharmacists] participating in the Medicaid program is a 'selective group inherently suspect of criminal activities.'" *People* v. *Herbert*, 108 Ill. App. 3d 143, 148 (1982), quoting *Marchetti* v. *United States, supra* at 57.

1981); G. L. c. 118E.[8]  Massachusetts requires that all Med-
icaid providers keep and maintain records documenting
"proof, subject to audit, of the actual deliverance of services
and goods to recipients for which bills are submitted."
G. L. c. 118E, § 20, as amended through St. 1982, c. 368.
Thus, Birch Drug has agreed to keep "such records as are
necessary to disclose fully the extent of services furnished to
recipients, and on request to furnish the Department or the
Medicaid Fraud Control Unit with such information and
any other information regarding payments claimed by the
contractor for furnishing services."  106 Code Mass. Regs.
450.223(C)(3) (1979), 185 Mass. Reg. 25 (Dec. 1, 1979).

The records at issue also "have assumed 'public aspects'
which render them at least analogous to public documents."
*Grosso* v. *United States, supra* at 68.  The operation of
Medicaid programs is "substantially interwoven with the
public interest."  *Sreter* v. *Hynes,* 419 F. Supp. 546, 549
(E.D.N.Y. 1976).  Both Massachusetts and the Federal gov-
ernment have built into the procedure for the reimburse-
ment of Medicaid providers record keeping requirements in
order to obtain "both quality control and fraud detection."
*Gabor* v. *Hyland,* 166 N.J. Super. 275, 279 (1979).  The re-
quired records exception to the privilege against self-
incrimination "has been explained on the basis that the
public interest in obtaining such information outweighs the
private interest opposing disclosure . . . and the further ra-
tionale that such records become tantamount to public
records."  *In re Grand Jury Proceedings,* 601 F.2d 162, 168
(5th Cir. 1979).  See generally Meltzer, Required Records,
The McCarran Act, and the Privilege Against Self-Incrimi-
nation, 18 U. Chi. L. Rev. 687, 709-718 (1951); 8 J. Wig-
more, Evidence § 2259c (McNaughton rev. 1961).

When Stornanti provides a drug to a Medicaid recipient,
he bills the Commonwealth, using an "MA-5 form."  Every

---

[8] In order to receive Federal funds for a portion of the costs of the
Medicaid program, Massachusetts must have an approved State plan. A
requirement for approval of such a plan is that each State ensure that
Medicaid providers maintain and make available records relating to ser-
vices for which they are seeking payment.  42 U.S.C. § 1396a(a)(27)
(1976 & Supp. V 1981).  See 42 C.F.R. 431.107(b) (1982).

time Stornanti signs the reimbursement form, he certifies that he will "keep such records as are necessary to fully disclose the extent of the service provided under the State's Title XIX Plan and to furnish such information regarding any payments claimed above as the State Agency may request." [9]

After Stornanti completes an MA-5 form, the Commonwealth uses taxpayers' dollars to reimburse Birch Drug. In fact, the entire Medicaid program uses public funds to provide health care services to those unable to obtain such services privately. Thus, the records kept pursuant to the Medicaid plan have "public aspects" of an even more significant character than those at issue in *Shapiro* v. *United States*, 335 U.S. 1 (1948) (records kept pursuant to price control regulations). See *People* v. *Herbert*, 108 Ill. App. 3d 143, 148 (1982); *In re Morris Thrift Pharmacy*, 397 So. 2d 1301, 1304 (La. 1981). See also *United States* v. *Silverman*, 449 F.2d 1341, 1345 (2d Cir. 1971), cert. denied, 405 U.S. 918 (1972). Cf. *United States* v. *Kaufman*, 429 F.2d 240 (2d Cir.), cert. denied, 400 U.S. 925 (1970).[10]

Further, Birch Drug voluntarily chose to participate in the Medicaid program and to comply with all the "laws, rules and regulations" of the program including record keeping and inspection requirements. G. L. c. 118E, § 18 (4). See *In re Morris Thrift Pharmacy, supra* at 1302. As

---

[9] In addition to these record keeping and inspection requirements, Medicaid providers' records, under certain statutory conditions, are subject to inspection by the Massachusetts Rate Setting Commission. See G. L. c. 6A, § 35. Retail pharmacies dispensing controlled substances are subject to other, similarly comprehensive, legislation which also requires them to keep records and make them available for inspection. See, e.g., G. L. c. 94C, §§ 5, 6, 11, 12, 13, 15, 20, 23, 26, 30; G. L. c. 112, § 42A; 21 U.S.C. §§ 207, 211 (1976).

[10] Stornanti's contention, that we should not recognize a required records exception to the privilege against self-incrimination because *Lefkowitz* v. *Turley*, 414 U.S. 70 (1973), has abrogated the exception, is without merit. *Lefkowitz* concerned compelled testimony from State contractors about their job performance under the threat of economic and other sanctions. It did not address the subpoenaed production of records, required to be kept by State and Federal law, in which requests for payments contain an express waiver form certifying that the records will be made available to the government on request.

noted, Stornanti consented, when he voluntarily entered in-
to an agreement with the Commonwealth to be a Medicaid
provider, that his records for prescriptions and other serv-
ices rendered would have to be kept and would be open to
the Commonwealth for inspection. See *In re Rozas Gibson
Pharmacy of Eunice, Inc.*, 382 So. 2d 929, 933 (La. 1980).[11]
"These obligations to keep and produce the records are in
a sense consented to as a condition of being able to carry
on the regulated activity involved. In this respect, the
mere response by production is no more a violation of the
privilege against self-incrimination than requiring the crea-
tion of the record itself, for it is the record, presumably, that
might incriminate." *In re Grand Jury Proceedings*, 601
F.2d 162, 171 (5th Cir. 1979). We agree with the Com-
monwealth that "Stornanti should not be permitted to cause
the corporation to voluntarily join the Medicaid program
. . . and agree to keep records, and then attempt to assert a
privilege to prevent the production of those records." See
*Nichols* v. *Commissioner of Pub. Welfare*, 311 Mass. 125,
129 (1942).

On these facts we conclude that the records Stornanti was
ordered to produce are required to be kept pursuant to State
and Federal regulations, and thus are "required records."
See *People* v. *Doe*, 107 Misc. 2d 605 (N.Y. Sup. Ct. 1981).
As custodian of the records, Stornanti "has voluntarily
assumed a duty which overrides his claim of privilege . . .
[and which] applies not only to public documents in public
offices, but also to records required by law to be kept . . . ."
*Shapiro* v. *United States*, 335 U.S. 1, 17 (1948).

---

[11] Stornanti argues that considering him to have consented to produc-
tion of his records contravenes our reasoning in *Commonwealth* v. *Joyce*,
326 Mass. 751 (1951). In *Joyce*, we declined to follow the reasoning of
other States that accepting the privilege of operating an automobile on a
highway constituted an implied waiver of the rights against compulsory
self-incrimination. *Id.* at 756. There is no question of implied waiver in
this case. Stornanti, as custodian of Birch Drug's records, has expressly
agreed to provide the required records and to make them available to the
Commonwealth.

We believe that the same reasons which take required records outside the scope of the Federal privilege against self-incrimination take required records outside the scope of the privilege under the Massachusetts Constitution as well. When there are no reported Massachusetts decisions directly considering whether the required records exception applies to art. 12,[12] this court may look to cases in other jurisdictions to define the scope of the required records exception. We can adopt the Federal rule if it is consonant with our Constitution. In this case, the Federal rule is particularly applicable because the Commonwealth's Medicaid program is partially funded under the Federal program with Federal funds, and the records are required to secure Federal reimbursement. Thus, we conclude that a pharmacy which voluntarily participates in the Medicaid program cannot successfully claim the privilege against self-incrimination under art. 12 for records required to be kept by the Medicaid plan.[13]

We conclude, therefore, that in the circumstances of this case, art. 12 does not guarantee more extensive rights than does the Fifth Amendment. Cf. *Commonwealth* v. *Brennan*, 386 Mass. 772, 779-780 (1982). Finally, Birch Drug

---

[12] Stornanti argues that our decision in *Commonwealth* v. *Hughes*, 380 Mass. 583, cert. denied, 449 U.S. 900 (1980), compels a result in his favor. In *Hughes*, we decided that the defendant need not produce a gun allegedly used in the commission of a crime, because the compelled production itself was testimonial in nature and potentially incriminating. Our ruling in *Hughes* is clearly inapplicable to this case. Unlike the defendant in *Hughes*, Stornanti has voluntarily agreed to enter the Medicaid program. He was thus required by law to keep these records, and has signed waivers of his right not to produce them. Nothing in our decision in *Hughes* renders the required records exception inapplicable to the subpoena ordering Stornanti to produce records required to be kept.

[13] The Commonwealth urges us to reach the same result by invoking the concept of the supremacy of Federal law. However, there is no supremacy issue here. Massachusetts and Federal law both require record keeping and disclosure of these records by Medicaid providers. There is no conflict, but rather congruence, between State and Federal demands on Medicaid providers. At issue, therefore, is the effect of State and Federal law under the State Constitution.

has not challenged the constitutionality of the Federal and State laws and regulations requiring record keeping for Medicaid providers, and there is no question as to the State's authority to impose such requirements before us.[14]  The records sought by the subpoena are required records.  Birch Drug has made a knowing and voluntary waiver of its right to refuse to produce records of its Medicaid services by voluntarily participating in the Medicaid program.  Stornanti, as custodian of the records, cannot successfully rely on a privilege against self-incrimination entitling him to refuse to produce Birch Drug's records.  Consequently, we affirm the order of the Superior Court holding Stornanti in civil contempt.

*Order affirmed.*

---

[14] Stornanti, in addition to claiming that some requested corporate records are private and not "public" records within the required records exception, a claim we have rejected, also contends that his compliance with the subpoena by providing Medicaid patient drug profile records, prescription records, and doctors' order forms, would violate his clients' right to privacy.  However, the Medicaid plan partially protects privacy rights by restricting "the use or disclosure of information concerning applicants and recipients to purposes directly connected with the administration of the plan."  42 C.F.R. § 431.300 (1982).  Massachusetts has the identical requirement.  G. L. c. 118E, § 23.  See 106 Code Mass. Regs. 450.205 (1979).  A specifically listed purpose is "[c]onducting or assisting an investigation, prosecution, or civil or criminal proceeding related to the administration of the plan."  42 C.F.R. § 431.302 (1982).  A State Medicaid fraud control unit is designed to protect the program from fraudulent practices, 42 U.S.C. § 1396b(q) (1976 & Supp. V 1981), and has access to recipients' records when it needs the information they contain in an investigation of suspected fraud.  See 42 C.F.R. § 455.21 (1982); *In re Grand Jury Investigation,*  R.I.      (1982) (441 A.2d 525 [R.I. 1982]).  The Medicaid fraud control unit is obligated to protect the privacy rights of recipients.  See 42 C.F.R. § 455.21(a)(2)(iii) (1982); 42 C.F.R. §§ 431.304-431.306 (1982).

Furthermore, the State is required to publicize its confidentiality provisions to applicants.  42 C.F.R. § 431.304 (1982).  The existence of these Medicaid regulations gives those people who choose to receive medical services under the Medicaid program only a limited expectation in the privacy of their records.  Cf. *Whalen* v. *Roe,* 429 U.S. 589 (1977).  Thus, we conclude that Stornanti's claim that the applicants' privacy rights were violated is not substantiated on this record.