# IN THE MATTER OF LAWRENCE J. KENNEY.

Suffolk. November 6, 1986. — March 12, 1987.

Present: HENNESSEY, C.J., NOLAN, LYNCH, & O'CONNOR, JJ.

*Attorney at Law*, Disciplinary proceeding, Suspension, Records. *Constitutional Law*, Self-incrimination. *Due Process of Law*, Attorney disciplinary proceeding.

Affidavits and other materials submitted to a single justice of this court in support of a petition by bar counsel provided sufficient evidence from which the single justice could conclude that a certain attorney posed a threat to present and potential clients, and the single justice acted within his discretion in suspending the attorney from the practice of law pending further disciplinary proceedings. [434-435]

An attorney's temporary suspension from the practice of law pending further disciplinary proceedings did not infringe his procedural due process rights, where, prior to the suspension, the attorney had been afforded notice of the charges against him and a hearing before a single justice of this court and where he was also afforded a postsuspension review after applying for termination of the suspension. [435-437]

This court interpreted S.J.C. Rule 4:01, § 12A, to require that disciplinary proceedings against an attorney temporarily suspended from the practice of law be instituted within a reasonable time after the suspension takes effect and that such proceedings must be given priority over other cases concerning attorneys who are not under suspension. [437]

In a bar disciplinary proceeding a single justice of this court correctly concluded that the enforcement of a subpoena requiring the respondent attorney to produce certain records would not infringe the attorney's constitutional privilege against compulsory self-incrimination, where all of the tests of the "required records" doctrine of *Stornanti* v. *Commonwealth*, 389 Mass. 518 (1983), were fulfilled in that the purpose of the single justice's inquiry was essentially regulatory; enforcement of the subpoena was to be restricted to those records which the respondent was required to maintain, either by law or by rule of this court; and, by reason of the strong public interest in the integrity of the bar, the records had assumed "public aspects" rendering them analogous to public documents. [437-442]

PETITION for temporary suspension of an attorney filed in the Supreme Judicial Court for the county of Suffolk on April 18, 1986.

Orders temporarily suspending the respondent from the practice of law and directing him to comply with a subpoena to produce certain records were entered by *Wilkins*, J.

*Lawrence J. Kenney*, pro se.

*Daniel J. Klubock*, Bar Counsel.

LYNCH, J. Mr. Lawrence J. Kenney appeals from the May 16, 1986, order of a single justice that he be "immediately temporarily suspended from the practice of law in the Commonwealth of Massachusetts pending further disciplinary proceedings before the Board of Bar Overseers." S.J.C. Rule 4:01, § 12A, inserted by 394 Mass. 1105 (1985).[1] He also appeals from the August 1, 1986, order of the single justice to comply with a subpoena to produce certain records relevant to the investigation of the allegations of professional misconduct. S.J.C. Rule 4:01, § 22, as amended, 394 Mass. 1106 (1985).[2]

On May 5, 1986, a single justice of this court issued an order to show cause why Mr. Kenney should not be immediately temporarily suspended from the practice of law. A

[1] Rule 4:01, § 12A, of the Rules of the Supreme Judicial Court (1985) provides: "Upon the filing with this court of a petition by the Bar Counsel alleging facts showing that an attorney poses a threat of substantial harm to his clients or prospective clients, this court shall enter an order to show cause why the attorney should not be immediately suspended from the practice of law pending final disposition of any disciplinary proceeding commenced by the Bar Counsel. The court or a justice, after affording the attorney opportunity to be heard, may make such order of suspension or restriction as protection of the public may make appropriate. In the interest of justice, the court, upon application of the attorney, may terminate such suspension at any time after affording Bar Counsel an opportunity to be heard."

[2] Rule 4:01, § 22, of the Rules of the Supreme Judicial Court (1985) provides in part: "Upon request by the Bar Counsel or a respondent-attorney for testimony or the production of evidence at a hearing, or upon request by the Bar Counsel for testimony or the production of evidence at any stage of an investigation, witnesses may be summoned by subpoenas issued at the direction of the Chairman of the Board or his designee or of the chairman of a hearing committee. Witnesses before hearing committees shall be examined under oath or affirmation."

hearing was held before the single justice on May 15, 1986. The petition for temporary suspension was accompanied by affidavits of four different attorneys, as well as other supporting documents.

Mr. Kenney declined to answer to the charges except to deny that the documents evidenced that anyone lost any property. He asserted his privilege against compelled self-incrimination under the Fifth Amendment to the United States Constitution, and declined to comment on the facts of the matter. The single justice suggested that Mr. Kenney consider obtaining counsel and gave him until the next day to notify the court that he wished to have counsel.[3] The clerk's office received no notification from Mr. Kenney.

On May 16, 1986, the single justice ordered Mr. Kenney "immediately temporarily suspended from the practice of law in the Commonwealth of Massachusetts pending further disciplinary proceedings." Mr. Kenney filed a timely appeal to the full court. On June 27, 1986, the single justice denied Mr. Kenney's application to terminate the suspension order of May 16, 1986, and declined to stay the order pending a possible request to the full bench for a stay pending appeal.

Mr. Kenney received a subpoena ordering him to appear before the Board of Bar Overseers (board) on June 10, 1986, and directing him to bring certain documents. Mr. Kenney appeared before the board but declined to testify or produce the requested records, claiming his privilege under the Fifth Amendment. Bar counsel filed a petition for contempt to enforce the subpoena and on July 16, 1986, a hearing was held before a single justice of this court. On August 1, 1986, the single justice ordered Mr. Kenney to produce certain records. Mr. Kenney filed a timely appeal to the full court. On August 14, 1986, the single justice stayed the order of production to allow Mr. Kenney to seek a stay from the full court pending appeal. The full court granted a stay pending the appeal of the order of August 1, 1986.

---

[3] Bar counsel contends that he advised Mr. Kenney as early as February, 1986, that he should obtain counsel in this matter.

We review the decisions of the single justice to determine whether they are supported by sufficient evidence, free from errors of law, and free from any abuse of discretion. See *Matter of McInerney*, 389 Mass. 528, 530 (1983).

1. *Temporary suspension.* Mr. Kenney contends that the temporary suspension ordered by the single justice of this court violated his Fifth Amendment right against compelled self-incrimination and his right to due process of law.

a. *Fifth Amendment.* Mr. Kenney claims that he was temporarily suspended because he exercised his constitutional privilege against self-incrimination. We disagree.

There is no doubt that a lawyer may not be sanctioned as a penalty for asserting the privilege against self-incrimination. *Spevack* v. *Klein*, 385 U.S. 511, 514 (1967) (plurality opinion). Mr. Kenney, however, was not suspended from the practice of law as a penalty for asserting that privilege. He was suspended because bar counsel fulfilled the requirements of S.J.C. Rule 4:01, § 12A, and made a showing that there were reasonable grounds to believe that Mr. Kenney posed "a threat of substantial harm to his clients or prospective clients." The single justice found that "based on affidavits presented by bar counsel, after hearing . . . there existed sufficient evidence of the attorney's misconduct that he posed a threat to current and prospective clients."

The petition for temporary suspension consisted of more than mere allegations. It was accompanied by affidavits of four members of the Massachusetts Bar, together with supporting documents. These evidenced that Mr. Kenney had converted to his own use, funds from various accounts in which he acted as a fiduciary and that he had failed to make distribution of funds as requested. Such activity is violative of S.J.C. Rule 3:07 DR 1-102 (A) (4), (5), (6), as appearing in 382 Mass. 769 (1981), DR 9-102 (A), (B) (3), (4), as appearing in 382 Mass. 795 (1981).[4] There was sufficient evidence, therefore, from

_____

[4] Disciplinary Rule 1-102 (A) (4), (5), (6) provides: "A lawyer shall not: . . . (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. (5) Engage in conduct that is prejudicial to the administration of justice. (6) Engage in any other conduct that adversely reflects on his

which the single justice could have concluded that Mr. Kenney posed a threat to present and potential clients. Mr. Kenney admitted at the hearing that he had two or three estates in which he was acting in a fiduciary capacity. In order to protect present and future clients, the single justice was well within his discretion to temporarily suspend Mr. Kenney pending further disciplinary proceedings. Thus, the order was not based upon error of law, abuse of discretion, or insufficient evidence.

b. *Due process.* Mr. Kenney claims that he was denied due process of law as he was not afforded a hearing "in the traditional sense," prior to his suspension. He claims that he had no witnesses and no opportunity for cross-examination. Bar counsel claims that Mr. Kenney had the *opportunity* to present evidence, to object to the affidavits and other documents presented by bar counsel, and to request that the affiants be made available for cross-examination. Mr. Kenney was also given an opportunity to obtain counsel to represent him in the matter. We agree with bar counsel that Mr. Kenney was afforded procedural due process prior to his suspension.

There is no doubt that Mr. Kenney has a constitutionally protected interest in his license to practice law and that he must be afforded due process of law before he can be deprived of that interest. See *Mathews* v. *Eldridge,* 424 U.S. 319, 333 (1976); *In re Ruffalo,* 390 U.S. 544, 550 (1968). The fundamental requisite of due process is an opportunity to be heard at a meaningful time and in a meaningful manner. *Goldberg* v. *Kelly,* 397 U.S. 254, 267 (1970), and cases cited.

In order to determine what process is due, we must balance three factors: the private interest affected, the governmental

fitness to practice law." Disciplinary Rule 9-102 (A) provides in part: "All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the State in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein . . . ." Disciplinary Rule 9-102 (B) (3) and (4) provides that a lawyer must maintain complete records regarding clients' funds and property which come into his possession, "from the time of receipt to the time of final distribution," and must on request promptly deliver such funds as the client is entitled to receive.

interest, and an evaluation of the procedure used. *Mathews* v. *Eldridge, supra* at 335. In a disbarment proceeding an attorney is entitled to procedural due process which includes fair notice of the charges and an opportunity for explanation and defense. *In re Ruffalo, supra.* In accordance with rule 4:01, § 12A, Mr. Kenney received notice of the charges and was afforded a hearing before a single justice of this court prior to his suspension. Mr. Kenney was also afforded a postsuspension review under his application to terminate.

Upon weighing the various factors we do not find the rule constitutionally infirm. The attorney has a substantial property right in his license to practice law. The State, on the other hand, has a significant interest in protecting the public from attorneys who engage in serious misconduct, particularly when the misconduct involves misuse of clients' funds or a compromising of the fiduciary relationship. There is also a strong interest in maintaining the integrity of the bar. It should be noted that the rule provides the attorney an opportunity to be heard prior to any action by the court. Furthermore, the proceedings do not finally adjudicate the matter, but merely provide a setting from which a single justice can determine whether there are reasonable grounds to believe that the allegations are true. The Supreme Court has upheld the process used to terminate protected interests where the complainants were afforded similar or lesser procedural safeguards. See *Cleveland Bd. of Educ.* v. *Loudermill*, 470 U.S. 532, 545 (1985).[5] See also *Hewitt* v. *Helms*, 459 U.S. 460 (1983) (nonadversary, informal evidentiary hearing sufficient to determine grounds for continued administrative segregation of prisoner). See *Barry* v. *Barchi*, 443 U.S. 55 (1979) (suspension of horse trainer's

---

[5] In *Cleveland Bd. of Educ.* v. *Loudermill, supra*, the Supreme Court held that some kind of predischarge opportunity to respond was required for an employee with a property interest in employment. *Id.* at 542-543. The Court stated that "the pretermination 'hearing,' . . . need not be elaborate. . . . '[S]omething less' than a full evidentiary hearing is sufficient prior to adverse administrative action." *Id.* at 545. The purpose is to determine whether there are reasonable grounds to believe that the charges are true and support the proposed action. *Id.* at 546.

license valid without pretermination hearing where probable cause existed and prompt postsuspension hearing was afforded).

Rule 4:01, § 12A, does not provide any guidelines or time limits for a postsuspension hearing. An immediate postsuspension hearing is imperative where there has been no presuspension hearing. *Barry* v. *Barchi, supra* at 66. *Gershenfeld* v. *Supreme Court*, 641 F. Supp. 1419, 1424 (E.D. Pa. 1986). While rule 4:01, § 12A, does provide for notice and a meaningful opportunity to respond prior to suspension, there must be a final resolution of the charges at some point. See *Cleveland Bd. of Educ.* v. *Loudermill, supra* at 547. As rule 4:01, § 12, is written, it appears to contemplate that disciplinary proceedings would have been commenced by bar counsel, or, at least, are forthcoming.[6] Once disciplinary proceedings are begun, the rules of the Supreme Judicial Court provide guidelines and timetables for the adjudication of the matter. S.J.C. Rule 4:01, § 8, as amended, 394 Mass. 1105 (1985). This procedural protection must be triggered at some point after a temporary suspension or the suspension terminated. *In Loudermill, supra*, a delay of nine months was upheld. In the present case, bar counsel anticipates that it could be several months before a petition for discipline is filed. Since the rule does not specify when formal disciplinary proceedings must be instituted and since a temporary suspension without a final adjudication would not be constitutional, we interpret the rule to require that disciplinary proceedings, if not already begun, must be instituted within a reasonable time. Mr. Kenney's case, and the cases of others who are under temporary suspension pursuant to Rule 4:01, § 12A, must be given priority over cases in which the attorneys are not under suspension.

Thus, S.J.C. Rule 4:01, § 12A, does not violate due process either on its face or as applied.

2. *Production of documents*. Mr. Kenney was ordered to appear before the board on June 10, 1986, and to bring with him: "(1) Copies of any and all monthly statements of any and

---

[6] The rule allows temporary suspension "pending final disposition of any disciplinary proceeding commenced by the Bar Counsel."

all bank accounts to which you have had access, for the period from December 1, 1985 to present; (2) A complete list of every matter which is currently in your office in which you act in a fiduciary capacity, hold client funds in escrow, or otherwise have access to funds, securities or properties of clients or other third persons."

At the hearing to enforce the subpoena, bar counsel limited his request to records that the attorney is required to maintain by law or rule of this court. The single justice determined that the requested records met the "required records" exception of *Stornanti* v. *Commonwealth*, 389 Mass. 518 (1983), and ordered Mr. Kenney to comply, with minor modifications.

Mr. Kenney claims that the records requested do not meet the requirements of *Stornanti* v. *Commonwealth, supra*, and that producing them would have testimonial aspects such that he would be protected by his privilege against self-incrimination. Bar counsel contends that the records do fall within the ambit of the "required records" exception and that the production of the documents does not constitute compulsory self-incrimination.

The privilege which applies to private documents cannot be applied to public records or to records "required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation and the enforcement of restrictions validly established." *Shapiro* v. *United States*, 335 U.S. 1, 17 (1948). This exception, known as the "required records" doctrine, applies when three requirements are met: (1) the purpose of the State's inquiry must be essentially regulatory, (2) the records are of a type customarily kept by the party of whom the request is made, and (3) the records must have assumed "public aspects" such that they are analogous to public documents. *Stornanti* v. *Commonwealth, supra* at 521-522, citing *Grosso* v. *United States*, 390 U.S. 62, 67-68 (1968).

We agree with the single justice that the documents in question fall within the "required records" exception of *Stornanti, supra*. The purpose of bar counsel's inquiry is clearly regulatory. "The power to regulate the practice of law and the conduct

of attorneys lies with the judiciary." *District Attorney for the Plymouth Dist.* v. *Selectmen of Middleborough*, 395 Mass. 629, 633 (1985). See *Opinion of the Justices*, 375 Mass. 795, 813 (1978). "[M]embers of the Massachusetts Bar shall be regulated by the Canons of Ethics and Disciplinary Rules." S.J.C. Rule 3:07(1), as appearing in 382 Mass. 768 (1981). The Supreme Judicial Court has exclusive disciplinary jurisdiction over attorneys admitted to practice in this Commonwealth. S.J.C. Rule 4:01, § 1 (1), as amended, 368 Mass. 900 (1976). The board was established by this court to investigate allegations of attorney misconduct and to assist in the regulation of the practice of law in the Commonwealth. See S.J.C. Rule 4:01, §§ 5 through 8, as amended through 394 Mass. 1105 (1985). This court has provided the board with the power to issue subpoenas "for testimony or the production of evidence at any stage of an investigation." S.J.C. Rule 4:01, § 22, as amended by 394 Mass. 1106 (1985). We agree with the single justice that "[t]he purpose of the inquiry is to further an investigation of the conduct of an attorney within this court's disciplinary jurisdiction and, therefore, is 'essentially regulatory.'"

Similarly, we agree that the records sought are those customarily kept by an attorney, with the exception of any records in the lawyer's possession that relate to the property of a nonclient third person. Rule 3:07, DR 9-102 (B) (3), of the Rules of the Supreme Judicial Court, as appearing in 382 Mass. 796 (1981), requires attorneys to "[m]aintain complete records of the handling, maintenance and disposition of all funds, securities and other properties of a client coming into the possession of the lawyer from the time of receipt to the time of final distribution; preserve such records for a period of ten years after final distribution of such funds, securities or other properties, and render appropriate accounts to the client regarding them." In addition, Mr. Kenney is required by G. L. c. 206, § 1 (1984 ed.), to file an account with the court in those cases where he acts as a court-appointed fiduciary.[7] In order to meet

---

[7] The account must list all personal property and in some cases real property, any income from the sale of any property, any payments, charges,

his legal obligation to make such an accounting to the court, Mr. Kenney must necessarily maintain financial records from which to prepare the accounts. Thus, the second prong of *Stornanti* v. *Commonwealth, supra,* is satisfied with respect to either those records maintained by Mr. Kenney in cases where he acts as a court-appointed fiduciary or records required by DR 9-102 (B) (3).

Further, these records have assumed " 'public aspects' which render them at least analogous to public documents." *Grosso* v. *United States, supra* at 68, quoted in *Stornanti, supra* at 521-522. While the records themselves are not "public documents," they are necessary for Mr. Kenney to meet his statutory and ethical obligations. When acting as a fiduciary, he voluntarily enters into a relationship which is under the scrutiny of the court and in which he must file accurate accounts and inventories. In *Stornanti, supra,* drugstore records relating to dispensation of drugs and medical supplies to those receiving Medicaid benefits assumed "public aspects" because the Medicaid program was interwoven with the public interest. *Id.* at 519, 522-523. In the present case, there is a strong public interest in "protecting against fraud and preserving the integrity of the judicial process for the administration of estates." Matter of Lawrence J. Kenney, S.J.C. No. 86-10 BD at 7 (August 1, 1986). We agree with the single justice that this interest "outweighs the attorney's minimal expectation of privacy." *Id.* Similarly, enforcement of DR 9-102 (B) (3) implies a need to review the records required by that rule and, to that end, the board has been given subpoena power. This power is essential for the board to perform its regulatory function. Again, the public interest in preserving the integrity of the bar and in protecting the public from attorney misconduct gives at least "public aspects" to the records.

Mr. Kenney argues that the act of producing the records is testimonial and therefore protected by the Fifth Amendment privilege against compelled self-incrimination. We disagree. The Fifth Amendment protects against surrender of documents

losses, or distributions and, last, the investment of the balances and any changes of investment. G. L. c. 206, § 2 (1984 ed.)

where the production itself would have testimonial and incriminating aspects to it. *United States* v. *Doe*, 465 U.S. 605, 611-613 (1984). *Fisher* v. *United States*, 425 U.S. 391, 408 (1976). *In re Kave*, 760 F.2d 343, 356 (1st Cir. 1985).[8] See *Commonwealth* v. *Hughes*, 380 Mass. 583, 588 (1980) (Fifth Amendment applies to production of incriminating evidence only where testimonial communication is compelled). Production of the documents is an admission that the records exist, that they are in the possession of the person and that they are authentic; such an admission could be incriminating. See *United States* v. *Doe, supra* at 613 n.11; *Fisher* v. *United States, supra* at 411-412. Since the records sought in the present case are required by statute or rule, there is nothing incriminating in the fact that they exist and are in the possession of Mr. Kenney. Production does not compel oral testimony nor does it compel Mr. Kenney "to restate, repeat, or affirm the truth of the contents of the documents sought." *Fisher* v. *United States, supra* at 409. Further, the "required records" exception is, just that, an *exception* to the valid assertion of the Fifth Amendment privilege against self-incrimination. See *Shapiro* v. *United States*, 335 U.S. 1, 17 (1948); *In re Two Grand Jury Subpoenae Duces Tecum Dated August 21, 1985*, 793 F.2d 69, 73 (2d Cir. 1986).

Mr. Kenney contends that the act of producing a list is compelled self-incrimination as it is clearly a request for written testimony. The single justice solved any problem that might be engendered by such a request by allowing Mr. Kenney to produce, in the alternative, merely the records themselves from which bar counsel could make his own list.

---

[8] In *Boyd* v. *United States*, 116 U.S. 616 (1886), the Supreme Court held that the Fifth Amendment barred court-ordered production of personal documents in one's possession. This was known as the "private papers" doctrine. The United States Court of Appeals for the First Circuit acknowledged that some cases and commentators believe that this rule was not limited by the later cases of *Fisher, supra* and *Doe, supra. In re Kave, supra* at 355 n.26. The First Circuit, however, takes the position that the protection is limited to where the production itself has testimonial aspects. *Id*. at 355. We agree with this reading of *Fisher, supra* and *Doe, supra*. The protection would also apply, of course, where the individual was asked to give oral testimony requiring a restatement or affirmation.

We agree with the single justice that the requested records fall within the "required records" exception and that their production does not involve compelled self-incrimination. Thus, the order of the single justice contained no error of law nor abuse of discretion, and was supported by sufficient evidence.

*Orders affirmed.*