IN THE MATTER OF ALBERT G. TOBIN.

Suffolk. November 4, 1993. - February 16, 1994.

Present: LIACOS, C.J., NOLAN, LYNCH, & GREANEY, JJ.

*Attorney at Law*, Disciplinary proceeding, Suspension, Attorney-client relationship. *Evidence*, Administrative proceeding.

The findings of a hearing committee of the Board of Bar Overseers in an attorney discipline matter were based on sufficient evidence and were free of error. [99]

The record of a bar discipline proceeding supported a single justice's conclusions that the respondent attorney had acted in violation of the canons of ethics and disciplinary rules by attempting to collect an excessive fee for his law firm, by failing to surrender a tax waiver to which a client was entitled, by making false time records in support of his fees that he filed in the Probate Court [99-101], and in litigating a certain matter in a vexatious and harassing manner that exceeded the bounds of zealous advocacy [101].

In a bar discipline proceeding, the respondent attorney's due process rights were not infringed by bar counsel's decision to rely on documentary evidence without introducing any live testimony, where the documentary evidence was properly admitted and the respondent was afforded ample opportunity to rebut it. [101-102]

A hearing committee of the Board of Bar Overseers correctly refused to issue subpoenas requested by the respondent attorney in a bar discipline proceeding, where the information sought through the subpoenas was not relevant to the petition for discipline. [102-103]

There was no merit to the claims of the respondent attorney in a bar discipline proceeding that he was denied discovery relevant to the allegations of bar counsel [103], or that he was somehow prejudiced by bar counsel's failure to investigate alleged disciplinary violations of others [103].

INFORMATION filed in the Supreme Judicial Court for the county of Suffolk on November 10, 1992.

The case was heard by *O'Connor*, J.

The respondent, pro se.

*Susan Strauss Weisberg*, Assistant Bar Counsel.

LYNCH, J. This bar discipline appeal arises from an order entered by a single justice of this court suspending Albert G. Tobin (respondent) from the practice of law in the Commonwealth for eighteen months. The order stemmed from three matters contained in two petitions for discipline filed with the Board of Bar Overseers (board) by bar counsel. One petition, involving Mary Arnold (Arnold matter), a client of his brother and partner, Robert H. Tobin, Sr., was heard by a hearing committee (committee) on February 5, 1991, in conjunction with a petition filed against the respondent's brother. See *Matter of Tobin, ante* 81 (1994). A second hearing was held on the remaining two matters on March 1, 1991. A single appeal panel (panel) heard the appeals of all three matters together.

The respondent was admitted to the practice of law in the Commonwealth on March 31, 1951. At all times relevant to this appeal he has practiced law in partnership with his brother in the Roslindale section of Boston. The first petition for discipline, the Arnold matter, was filed against both the respondent and his brother. Detailed facts of the Arnold matter are set forth in *Matter of Tobin, supra*, which we also decide today.

*Findings of the hearing committee.* The respondent's brother induced the client to retain him for unnecessary services and billed her an unreasonable amount for those services. See *Matter of Tobin, supra* at 84-85.

When Mary Arnold refused to pay the full amount of the bill, the respondent became involved in the case. He visited Mary Arnold at her home and attempted to justify the services which his partner had rendered. Mary Arnold thereafter paid $600, but refused to pay more. The respondent next sent a letter to Arnold's son in which he falsely represented that probate of the estate was necessary to secure a release of the estate tax lien and secure marketable title to the Arnold home. A second son tried to resolve the issue by offering $2,000 to settle the matter and when the respondent refused that offer, he suggested fee arbitration which the respondent

also refused. The respondent told the son that he would withhold the client's certificate releasing the tax lien thereby depriving Mary Arnold of marketable title until the full fee was paid. He ignored Mary Arnold's written demand for her certificate. Mary Arnold then filed a complaint with the board.

The respondent and his partner subsequently commenced an action in the Probate and Family Court Department against Mary Arnold to collect the balance due on the bill and recover payment for the time spent in responding to the complaint before the board. In their fee petition, the respondent and his partner submitted a false description of services rendered and false time records. The respondent and his partner compounded these misstatements with further misrepresentations to the Probate Court and bar counsel about the case and their services.

The committee found that the respondent:

> "(1) intentionally claimed fees for unnecessary and improper legal services; attempted to collect fees in the Probate Court under false pretenses; and made false and fraudulent representations to the Probate Court, to [Mary Arnold] and her family, and Bar Counsel, in violation of Canon One, DR 1-102 (A) (4)[,] (5), and (6);[1]

> "(2) charged and attempted to collect a grossly excessive fee, in violation of Canon Two, DR 2-106 (A) and (B);[2]

---

[1]Supreme Judicial Court Rule 3:07, Canon 1, DR 1-102 (A) (4), (5), and (6), as appearing in 382 Mass. 769 (1981), states: "(A) A lawyer shall not: . . . (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. (5) Engage in conduct that is prejudicial to the administration of justice. (6) Engage in any other conduct that adversely reflects on his fitness to practice law."

[2]Supreme Judicial Court Rule 3:07, Canon 2, DR 2-106 (A) and (B), as appearing in 382 Mass. at 772 (1981), states: "(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee. (B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence, experienced in the area of the law involved,

"(3) damaged and prejudiced his client in the course of the professional relationship, in violation of Canon Seven, DR 7-101 (A) (3);[3]

"(4) refused to deliver to [Mary Arnold] her certificate releasing the estate tax lien on demand, in violation of Canon Nine, DR 9-102 (B) (4)."[4]

The committee recommended a suspension of not less than thirty days. The appeal panel concurred with the committee's findings of fact and rulings of law and, while simultaneously considering the respondent's other disciplinary violations, recommended an eighteen-month suspension in addition to other requirements for reinstatement.

*The Roslindale Cooperative Bank and Lynch matters.* On October 28, 1977, the Commissioner of Banks (commissioner) suspended operations of the Roslindale Cooperative Bank because it appeared unsafe and inexpedient for the bank to continue in operation (bank matter). At that time, the respondent was president and a director of the bank. After administrative hearings, the respondent and several others were removed from their positions and Co-Operative Central Bank took over operations of the bank.

In the ten years following the takeover the respondent, seeking to reverse the action of the commissioner, brought nine State and Federal court actions and eighteen separate docketed appeals. Pleadings filed by the respondent were repetitive, incomprehensible, and irrational. Additionally, in

---

would be left with a definite and firm conviction that the fee is substantially in excess of a reasonable fee."

[3]Supreme Judicial Court Rule 3:07, Canon 7, DR 7-101 (A) (3), as appearing in 382 Mass. 784 (1981), states: "(A) A lawyer shall not intentionally: . . . (3) Prejudice or damage his client during the course of the professional relationship except as required under DR 7-102 (B)."

[4]Supreme Judicial Court Rule 3:07, Canon 9, DR 9-102 (B) (4), as appearing in 382 Mass. 795 (1981), states: "(B) A lawyer shall: . . . (4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

matters of both form and substance, they did not conform to rules of civil or appellate procedure. On seventeen different occasions, various courts admonished the respondent to cease his barrage of frivolous and inappropriate actions and pleadings. Moreover, he was barred from filing further pleadings without leave of court. Rather than being deterred by these admonitions, however, the respondent informed the hearing committee that he would consider whether to pursue the bank litigation again in order to "defend" himself.

In 1983 the respondent represented a client, Richard Lynch (Lynch matter), in the Housing Court and obtained a favorable result. The decision was appealed and, although he had no appellate experience other than his pro se representation in the bank cases, he represented Lynch on appeal. His filings in the Lynch matter betray the same errors of procedure and illogical representations that hallmark the bank cases. Indeed, he even interjected his wholly unrelated bank case claims. In the end, however, Lynch was not materially harmed by the respondent's conduct.

The committee ultimately determined that the respondent exceeded the bounds of zealous advocacy and his conduct was vexatious and harassing to the courts and opposing litigants. Moreover, his contemptuous disregard of the courts' admonitions was intolerable. Accordingly, the committee found that he violated S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (5), as appearing in 382 Mass. 769 (1981);[5] S.J.C. Rule 3:07, Canon 7, DR 7-106 (A), (C) (1), (6), and (7), as appearing in 382 Mass. 784 (1981).[6] The committee did not

---

[5] Supreme Judicial Court Rule 3:07, Canon 1, DR 1-102 (A) (5), as appearing in 382 Mass. 769 (1981), states: (A) A lawyer shall not: . . . (5) Engage in conduct that is prejudicial to the administration of justice."

[6] Supreme Judicial Court Rule 3:07, Canon 7, DR 7-106 (A), (C) (1), (6), and (7), as appearing in 382 Mass. 784 (1981), states: "(A) A lawyer shall not disregard or advise his client to disregard a standing rule of a tribunal or a ruling of a tribunal made in the course of a proceeding, but he may take appropriate steps in good faith to test the validity of such rule or ruling. . . . (C) In appearing in his professional capacity before a tribunal, a lawyer shall not: (1) State or allude to any matter that he has no reasonable basis to believe is relevant to the case or that will not be sup-

find, as bar counsel had alleged, that the respondent violated
S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (6), as appearing
in 382 Mass. 769 (1981) (other conduct adversely reflecting
on fitness to practice law) or that he violated S.J.C. Rule
3:07, Canon 6, DR 6-101 (A) (1), as appearing in 382 Mass.
783 (1981),[7] because he did not "know" of his incompetence.
The committee also found that he lacked the requisite mens
rea to know or to perceive that his actions and his claims
were unwarranted and likely only to harass and, therefore,
did not violate S.J.C. Rule 3:07, Canon 7, DR 7-102 (A) (1)
and (2), as appearing in 382 Mass. 784 (1981).[8] The com-
mittee found, apparently as a mitigating factor, that the re-
spondent's conduct stemmed from his fixation on the per-
ceived wrongs done to him and that he had no objectivity and
little capacity to regulate his own actions with respect to the
bank litigation. Thus, the committee recommended a suspen-
sion of no less than thirty days.

The respondent appealed from the committee's findings of
fact, conclusions of law, and recommendation for discipline.
Bar counsel appealed from the committee's finding that the
respondent did not violate DR 6-101 (A) (1), by handling a
legal matter which he should have known he was not compe-
tent to handle, and DR 7-102 (A) (1) and (2), by engaging

---

ported by admissible evidence. . . . (6) Engage in undignified or discourte-
ous conduct which is degrading to a tribunal. (7) Intentionally or habitu-
ally violate any established rule of procedure or of evidence."

[7]Supreme Judicial Court Rule 3:07, Canon 6, DR 6-101 (A) (1), as
appearing in 382 Mass. 783 (1981) states: "(A) A lawyer shall not: (1)
Handle a legal matter which he knows or should know that he is not com-
petent to handle without associating with him a lawyer who is competent
to handle it."

[8]Supreme Judicial Court Rule 3:07, Canon 7, DR 7-102 (A) (1) and
(2), as appearing in 382 Mass. 784 (1981), states: "(A) In his representa-
tion of a client, a lawyer shall not: (1) File suit, assert a position, conduct
a defense, delay a trial, or take other action on behalf of his client when he
knows or when it is obvious that such action would serve merely to harass
or maliciously injure another. (2) Knowingly advance a claim or defense
that is unwarranted under existing law, except that he may advance such
claim or defense if it can be supported by good faith argument for an
extension, modification, or reversal of existing law."

in conduct which it was obvious would serve merely to harass or maliciously to injure another. Bar counsel also appealed from the recommended sanction and urged suspension of the respondent for a period of three months. The panel accepted the committee's findings of fact but made additional rulings of law.

The panel found that the respondent "should have known" that he was not competent as an appellate attorney and, therefore, he did violate DR 6-101 (A) (1) in the bank matter. The panel also concluded that, although the respondent's obsession with the bank matter may have prevented him from forming the specific intent required for knowing misconduct, the harassing nature of his conduct was obvious and, therefore, he violated DR 7-102 (A) (1), in both the bank and Lynch matters. Next the panel concluded that the respondent's filings in the Lynch matter, inasmuch as they belied logic and procedure, justified the conclusion that the respondent violated DR 6-101 (A) (1) and DR 7-106 (A) and (C) (7), and, insofar as they contained references to the bank matter, he violated DR 7-106 (C) (1) by including a matter that he had no reasonable basis to believe is relevant to the case. Finally, the panel considered the Arnold, the bank, and the Lynch matters simultaneously and recommended an eighteen-month suspension, that the respondent be required to take and pass the Multi-State Professional Responsibility Examination as a condition of reinstatement, and that he demonstrate that he has complied with an order of the United States Court of Appeals of the First Circuit, dated March 6, 1985, to pay opposing counsel attorney's fees in the amount of $18,933.

On September 14, 1992, the board voted unanimously to adopt the panel's report and recommendations and to file an information with the Supreme Judicial Court for the county of Suffolk. On January 19, 1993, a single justice of this court, acting on this information, ordered that the respondent be suspended for a period of eighteen months. The respondent appeals from this order. We affirm.

*Standard of review.* In appropriate circumstances we review the record to determine whether the single justice's decision is supported by sufficient evidence, free from errors of law, and free from any abuse of discretion. *Matter of Kenney,* 399 Mass. 431, 434 (1987). On appeal of the Arnold matter, the respondent asserts that the conclusions were not supported by evidence and urges us to credit his version of events over the complainant's. The committee is, of course, the "sole judge of the credibility of the testimony presented at the hearing." *Matter of Saab,* 406 Mass. 315, 328 (1989), quoting S.J.C. Rule 4:01, § 8 (3), as appearing in 381 Mass. 784 (1980). *Matter of Provanzano,* 5 Mass. Att'y Discipline Rep. 300, 303-304 (1987). The committee's findings of fact were based on sufficient evidence and free of error.

*Argument on appeal of the Arnold matter.* The respondent first argues on appeal that there was no attorney-client relationship between him and Mary Arnold, and therefore, he could not have violated any disciplinary rules. He claims his attorney-client relationship with Mary Arnold terminated after he wrote the wills for Walter and Mary Arnold in 1983, and that his involvement in collecting his firm's fee did not create an attorney-client relationship.

The committee made no specific finding of fact on this issue. As bar counsel points out, however, an attorney-client relationship is not an essential element of the respondent's most egregious disciplinary violations. See DR 1-102 (A) (4), (5) and (6) (engaging in dishonest conduct, conduct prejudicial to administration of justice, and other conduct adversely reflecting on fitness to practice law); DR 2-106 (A) and (B) (collecting excessive fee).

The respondent's conduct, moreover, is inapposite to his claim of no attorney-client relationship. He discussed the fee with Mary Arnold and her sons on at least three separate occasions. He filed a petition in the Probate Court in an effort to collect the entire fee. He refused to surrender the inheritance tax waiver. He can hardly claim an attorney-client relationship for purposes of collecting the fee for his firm and then dispute the relationship in this forum. His conduct in

trying to collect the fee made it reasonable for Mary Arnold to assume he was acting in his capacity as both an attorney and partner of the law firm.

The respondent next claims that he was under no duty to relinquish his brother's "work product" — the inheritance tax waiver. Having become involved in the fee dispute and threatening to withhold the tax waiver, however, the respondent had a duty to respond to Mary Arnold's demand. At the time of the demand he did not claim "work product." Rather, he simply ignored the demand. In doing so, he damaged and prejudiced his client in the course of the professional relationship and failed to surrender property to which she was entitled.

The respondent next argues that the fee was not unreasonable because it conformed to guidelines that had been promulgated by the Massachusetts Bar Association and then withdrawn.[9] The fallacy of this argument is apparent when one considers that the respondent's brother agreed to charge Mary Arnold for time spent on the matter. The fee charged in no way reflects the actual time spent on the Arnold matter for work necessary to Mary Arnold's needs. Indeed, the committee found that the respondent created false time records in support of the fee and filed them with the probate petition. Accordingly, there was adequate evidence in the record to show that the respondent attempted to collect an excessive fee.

Finally, the respondent argues that the lack of pretrial discovery violated his due process rights under the Fourteenth Amendment to the United States Constitution. He cites no authority on point for his contention that due process affords him discovery rights equal to bar counsel. He makes no claim that he sought discovery in the Arnold matter and was

---

[9]The Massachusetts Bar Association adopted a minimum fee schedule in 1967, which provided guidance to establish what it considered proper legal fees for attorney services. 2 G. Newhall, Settlement of Estates § 278 n.26, at 139-140 (4th ed. 1958 & Supp. 1993). The schedule was withdrawn in 1973. *Id.*

denied it. Accordingly, his due process rights were not violated. See *Matter of Tobin, supra* at 87-88.

*The Roslindale Bank and Lynch matters.* The respondent bases his argument on asserted mistakes of law and procedure made by the various courts from which he sought relief from the commissioner's actions. He again seeks to relitigate the underlying facts of the multiple bank cases. What the respondent fails to understand is that, even if we were to assume that errors were made, the respondent's conduct still exceeded the bounds of reasonableness and warrants discipline. The underlying facts of the bank matter have no bearing on the respondent's complete disregard of appellate procedure and finality of judgments after exhaustion of appellate avenues.

On review of the record, we find that it amply supported the single justice's decision. *Matter of Kenney, supra* at 434. The respondent makes several claims of constitutional violations, however, which we shall address.

At the hearing, assistant bar counsel introduced in evidence pleadings, judgments, and other documents to support her allegations. Bar counsel rested on this documentary evidence without introducing any live testimony. The respondent claims that this conduct violated due process because he was unable to confront the witnesses against him.[10]

"The fundamental requisite of due process is an opportunity to be heard at a meaningful time and in a meaningful manner." *Matter of Kenney, supra* at 435. In a disbarment proceeding an attorney is entitled to procedural due process which includes fair notice of the charges and an opportunity for explanation and defense. *Id.* at 436. *In re Ruffalo*, 390 U.S. 544, 550 (1968).

---

[10]The respondent relies on *Pointer v. Texas*, 380 U.S. 400, 407-408 (1964), which held that *criminal* defendants' right under the Sixth Amendment to the United States Constitution to confront and to cross-examine the witnesses against them is applicable to the States by the Fourteenth Amendment to the United States Constitution. The respondent's reliance on *Pointer* is unfounded because bar discipline cases are not criminal in nature. *Matter of Jordan*, 332 Mass. 520, 521-522 (1955).

The respondent clearly was afforded these rights. Prior to the hearing, bar counsel had given the respondent copies of the documentary evidence introduced. The transcript reflects that the respondent was given every opportunity to explain his conduct and to defend himself against bar counsel's allegations. Indeed, on several occasions the committee asked questions of the respondent designed to elicit exculpatory testimony and, when he continued to argue the merits of the underlying cases, attempted to direct him to areas that would help his case. He offered no evidence or testimony to refute the documentary evidence.

The board was established by this court to investigate allegations of attorney misconduct and to assist in the regulation of the practice of law in the Commonwealth. *Matter of Kenney, supra* at 439. The admissibility of evidence in board proceedings is governed by the rules of evidence observed in the State Administrative Procedure Act.[11] See Board of Bar Overseers Rules § 3.39 (1993). The respondent makes no claim that the evidence was improperly admitted pursuant to these rules. The documentary evidence introduced was clearly relevant and carried with it sufficient indicia of reliability. We conclude that, since the respondent had ample opportunity to rebut the documentary evidence which was properly admitted, he was afforded due process.

The respondent also challenges the committee's pretrial order refusing to issue subpoenas requested by the respondent for judges, bank officials, the Attorney General, and other persons who were involved in the underlying bank matter and

---

[11]General Laws c. 30A, § 11 (2) and (4) (1992 ed.), provides, in pertinent part: "(2) Unless otherwise provided by any law, agencies need not observe the rules of evidence observed by courts . . . . Evidence may be admitted and given probative effect only if it is the kind of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs. . . . (4) All evidence, including any records, investigation reports, and documents in the possession of the agency of which it desires to avail itself as evidence in making a decision, shall be offered and made a part of the record in the proceeding . . . . Documentary evidence may be received in evidence in the form of copies or excerpts, or by incorporation by reference."

the Lynch matter. The committee determined that the information sought by the respondent through these subpoenas was relevant to the underlying cases and not to the petition for discipline. Inasmuch as the allegations against the respondent concerned improper pleadings, excessive claims, and complete disregard of judicial admonitions and appellate procedure, the hearing was not an opportunity to relitigate the underlying matters. It is clear from a review of the respondent's request for subpoenas that the committee's determination was correct and its refusal to issue the subpoenas was appropriate. Cf. G. L. c. 30A, § 12 (1992 ed.) (agency may vacate subpoenas on finding that testimony would not relate with reasonable directness to any matter in question or that subpoena is unreasonable or oppressive).

The respondent repeats his arguments that the lack of discovery available to him prior to his hearing rendered the entire proceeding violative of his due process rights. Our answer is the same. See *Matter of Tobin, supra* at 87-88. The record does not reflect that he was denied discovery relevant to the allegations of bar counsel. Therefore, we find no merit in this due process claim.

Finally, the respondent argues that bar counsel failed to investigate alleged disciplinary violations of opposing counsel, the Attorney General, and others involved in the bank matter and this failure somehow prejudiced the respondent in this matter. Whether bar counsel pursues discipline of others is irrelevant, however, to the respondent's current disciplinary action.

We do not conclude, and the respondent makes no argument, that the sanction imposed by the single justice is "markedly disparate" from sanctions in similar cases. See *Matter of Palmer*, 413 Mass. 33, 37-38 (1992); *Matter of Alter*, 389 Mass. 153, 156 (1983). Accordingly, we affirm the order of the single justice.

*So ordered.*