## In the Matter of Stuart R. Abrams.

Suffolk. March 4, 2002. - May 1, 2002.

Present: Marshall, C.J., Greaney, Ireland, Spina, Sosman, & Cordy, JJ.

*Attorney at Law,* Canons of ethics, Disciplinary proceeding, Suspension. *Due Process of Law,* Attorney disciplinary proceeding.

An attorney's temporary suspension from the practice of law pending further disciplinary proceedings did not infringe his procedural due process rights where, prior to the suspension, the attorney received ample and detailed notice of the grounds on which his temporary suspension was sought, and was afforded a hearing before a single justice of this court at which he could reply to the charges and present any evidence for her consideration; further, where the basis for the single justice's determination of a temporary suspension was obvious from the record, a memorandum explaining her decision was unnecessary. [654-655]

In circumstances in which an attorney failed to turn over to bar counsel necessary financial records, failed to comply with a subpoena duces tecum, and otherwise hindered the bar counsel's investigation, a six-month period between an order of a single justice of this court temporarily suspending the attorney and the bar counsel's institution of disciplinary proceedings was eminently reasonable. [655-656]

This court concluded that a single justice of this court was not required under S.J.C. Rule 4.01, § 12A, to impose on an attorney in a disciplinary matter the "least restrictive" sanction available to protect the public, and that, on the record presented, the imposition of a temporary suspension on the attorney was well within the proper bounds of her discretion. [656]

Petition filed in the Supreme Judicial Court for the county of Suffolk on November 1, 2000.

The case was heard by *Cowin,* J.

*Susan A. Strauss Weisberg,* Assistant Bar Counsel.

*James B. Dolan* for petitioner.

Marshall, C.J. This bar discipline appeal arises from an order of a single justice temporarily suspending Stuart R. Abrams (respondent) from the practice of law. Bar counsel's amended petition for discipline alleged that the respondent wrongfully converted funds of two clients (to whom we shall

refer as client A and client B) in substantial amounts, failed to account for and maintain adequate records concerning the funds, and failed to cooperate in bar counsel's investigation.[1]

On January 10, 2001, the single justice held a hearing on the amended petition for temporary suspension, at which the respondent was represented by counsel. On January 17, 2001, the single justice issued an order for the respondent's immediate temporary suspension from the practice of law, pending further proceedings before the Board of Bar Overseers and until further order of the court. The respondent appealed from and sought a stay of the order pending appeal, which was denied by the single justice on January 26, 2001.

1. *Client A.* The facts concerning client A are not disputed by the respondent. The respondent was entrusted to hold in escrow $50,000 from the proceeds of the sale of the client's property. By agreement the respondent was to make disbursements, on demand, for the costs of improvements the client had agreed to make to the property, and remit any balance to the client. Over an eight-month period the client repeatedly demanded that the respondent disburse funds to cover the costs of improvement, to no avail. Instead, the respondent used the funds to pay obligations unrelated to the client, thereby converting them to his own use. The respondent eventually returned $11,758 to the client — the payment was not made from the escrow fund — but thereafter did not respond to any of the client's demands, and refused to remit any further funds.

In September, 2000, client A filed a bar discipline complaint against the respondent. That same month, bar counsel directed the respondent to produce his files on the matter, his financial records, and a full accounting of client A's funds. The respondent failed to respond to those inquiries. As of November

---

[1]In support of the petition, bar counsel submitted affidavits and supporting documentation from each client. These in turn were supported by records from the respondent's banks, as well as spreadsheets and schedules detailing the respondent's application and disposition of funds as alleged in the petition. The respondent filed his own affidavits averring that he had repaid all funds to client A, that he had not caused any financial loss or harm to client B, and that he had accounted for all of such funds. He did not support his affidavits with any financial or independent records; nor did he submit any other documentary or testimonial evidence.

1, 2000, when bar counsel filed the initial petition for temporary suspension, the respondent owed restitution of $38,242, together with interest.

In mid-November, 2000, the respondent, acting through a business associate, offered to pay $20,000 to client A immediately, provided that the client sign an agreement and an affidavit (drafted by respondent) attesting to the effect that the respondent had satisfied all of his obligations to the client and agreeing to dismiss the bar discipline complaint he had commenced. The client refused. Some time later, the respondent effected full restitution using funds provided by the business associate.

These activities are sufficient to establish violations of S.J.C. Rule 3:07, Mass. R. Prof. C. 1.15, 426 Mass. 1363 (1998) (failure to safeguard and segregate trust account funds, deliver funds when due, render full accounting for funds, hold funds in individual account with interest payable as directed by client), and Mass. R. Prof. C. 8.4 (c), (g), and (h), 426 Mass. 1429 (1998) (conduct involving dishonesty, fraud, deceit, or misrepresentation; failure to cooperate in bar counsel's investigation; conduct adversely reflecting on fitness to practice law). The failure to act with reasonable diligence and promptness in the representation and failure to keep his client reasonably informed violated Mass. R. Prof. C. 1.3, 426 Mass. 1313 (1998), and Mass. R. Prof. C. 1.4, 426 Mass. 1314 (1998). The attempt to compel the withdrawal of the bar discipline complaint and the solicitation of the withdrawal through a business associate violated Mass. R. Prof. C. 8.4 (a), 426 Mass. 1429 (1998) (violating or attempting to violate Rules of Professional Conduct through the acts of another); Mass. R. Prof. C. 8.4 (c), (d), 426 Mass. 1429 (1998) (engaging in conduct prejudicial to administration of justice); Mass. R. Prof. C. 8.4 (h); and S.J.C. Rule 4:01, § 10, as appearing in 425 Mass. 1313 (1997) (prohibiting withdrawal of complaint as condition of settlement, compromise, or restitution).

*2. Client B.* The matter concerning client A arose while bar counsel was investigating disciplinary violations concerning client B. The record reflects the following. In 1986, a member of the client's family won over $3,000,000 in the State lottery,

payable in twenty annual instalments of about $158,000 before taxes. The respondent undertook to establish a family realty trust (we refer to the family trust as the B trust) and a partnership among the trust beneficiaries. He also represented the B trust. Throughout the 1990's the respondent was entrusted with trust funds including annual instalments of the lottery winnings. During that period, he failed to maintain anything resembling adequate records concerning these matters, and has not rendered adequate accountings for those funds.[2]

In January, 1998, the respondent was again entrusted with lottery winnings in the amount of $105,889.15. While some funds were paid to the B trust or its beneficiaries, he applied $48,383.76 of the funds to pay obligations unattributable to the client. By December of that year the account into which the funds had been deposited was all but depleted. In January, 1999, the respondent was again entrusted with lottery funds in the amount of $84,711.32, some of which were paid to the B trust or its beneficiaries, but $40,512.85 of which was paid for obligations unrelated to the client. To date, and despite bar counsel's repeated requests and the issuance of a subpoena duces tecum to the respondent to render a complete, documented accounting for the B trust funds, he has not accounted for those funds.

Bar counsel charged the respondent with conversion of a total of at least $67,900 and a failure to render a complete, truthful or accurate accounting for the funds, in violation of S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (4) and (6), as appearing in 382 Mass. 769 (1981) (dishonesty, fraud, deceit, or misrepresentation; other conduct adversely reflecting on fitness to practice law); S.J.C. Rule 3:07, Canon 9, DR 9-102 (A), as appearing in 419 Mass. 1303 (1995), and S.J.C. Rule 3:07, Canon 9, DR 9-102 (C), as amended, 419 Mass. 1306 (1995) (failure to safeguard, segregate, or account for trust account funds; failure to maintain required records; failure to hold funds at interest for

---

[2]The respondent also failed to maintain records of or account adequately for real estate and other assets held by the B trust or partnership, the total value of which, according to the respondent's own representations, fell from several million dollars in 1987 to a negative balance in 1991. His actions in that regard were not the focus of bar counsel's amended petition.

benefit of client); and Mass. R. Prof. C. 1.3, 1.4, 1.5, and 8.4 (c), (g) and (h).

3. *Discussion.* The respondent first challenges on due process grounds the fact that the single justice, in issuing her order of temporary suspension, did not issue an accompanying written memorandum. In *Matter of Ellis*, 425 Mass. 332 (1997), and *Matter of Kenney*, 399 Mass. 431 (1987), we considered certain due process challenges to the temporary suspension procedures provided by S.J.C. Rule 4:01, § 12A, as appearing in 425 Mass. 1315 (1997). We recognized that the "fundamental requisite of due process" on temporary suspension is "an opportunity to be heard at a meaningful time and in a meaningful manner" (citation omitted). *Id.* at 435. This requirement is satisfied, we concluded, by the rule's provisions for presuspension notice and a hearing, together with the availability of postsuspension review. *Id.* at 436. In this case, those requirements were fully met: the respondent received ample and detailed notice of the grounds on which his temporary suspension was sought. He was afforded a hearing before a single justice at which he could reply to the charges and present any evidence for her consideration.

Section 12A does not require a single justice to make explicit her findings that an attorney has violated any disciplinary rules or poses a threat to clients or prospective clients. *Matter of Ellis*, *supra* at 333-334. Nor is she required to issue a memorandum explaining her decision. See *Mildner* v. *Gulotta*, 405 F. Supp. 182, 195 (E.D.N.Y. 1975), aff'd sub nom. *Levin* v. *Gulotta*, 425 U.S. 901 (1976) (no due process violation where attorneys were suspended on State court's summary disaffirmance of referees' reports in the attorneys' favor without any judicial findings, statement of evidence, or explanation of reasons). The respondent contends that, because there were what he characterizes as contested issues of fact and credibility, a written explanation of the single justice's order was necessary in order to assure him a meaningful appeal. The contention is without merit. Cf. *Barry* v. *Barchi*, 443 U.S. 55, 64-65 (1979) (interim suspension of horse trainer's license without prior hearing upheld on showing of probable cause despite issues of credibility and conflicts in evidence). To the extent that the temporary suspen-

sion order required resolution of questions of fact or issues of credibility, the single justice necessarily resolved those matters against him. Cf. *Commonwealth* v. *Grandison*, 433 Mass. 135, 137 (2001) (issues of fact); *Commonwealth* v. *Lanoue*, 392 Mass. 583, 588 (1984), *S.C.*, 400 Mass. 1007 (1987), and 409 Mass. 1 (1990) (issues of credibility). And while a written explanation may in some cases be helpful for appellate review, here, it is undisputed that the respondent misused some $50,000 of the funds belonging to one client, and cannot account for some $67,900 of funds belonging to a second client. The respondent's affidavit to the effect that he paid out additional funds for the benefit of the B trust or its beneficiaries from cash or other unspecified sources, and that he was authorized to do so by the trustee, was unsupported by evidence, such as testimony or affidavits from the trustees or any checks, financial statements, or other documentary corroboration. This does not give rise to any issue of "credibility." The basis for the single justice's determination is obvious from the record. We may and have reviewed the record before the single justice and reach our own conclusion that the temporary suspension was warranted. See *Matter of Ellis*, *supra* at 334.

Section 12A requires that disciplinary proceedings must be instituted "within a reasonable time." *Matter of Kenney*, *supra* at 437. The respondent contends that his rights were violated because the investigatory period between his temporary suspension and the institution of disciplinary proceedings against him was indefinite. Bar counsel commenced formal disciplinary proceedings on July 31, 2001, six months after the single justice issued her order. During those months respondent frustrated bar counsel's investigation of these most serious charges by failing to turn over the necessary financial records and failing to comply with a subpoena duces tecum. He also failed to give notice of his suspension, resign a fiduciary appointment, close his trust accounts, or file a timely affidavit of compliance, as required by the suspension order and S.J.C. Rule 4:01, § 17, as amended, 426 Mass. 1301 (1997), resulting in an adjudication of contempt. In view of these circumstances, the six-month period was eminently reasonable. Cf. *Cleveland Bd. of Educ.* v. *Loudermill*, 470 U.S. 532, 547 (1985) (nine-month delay before posttermi-

nation hearing not unconstitutional where respondent offers no indication that wait was unreasonably prolonged).

The respondent's final argument need not detain us. Under S.J.C. Rule 4:01, § 12A, the single justice was not, as the respondent asserts, required to impose the "least restrictive" sanction available to protect the public, such as restricting the respondent from handling client funds and requiring him to practice under the supervision of another member of the bar. Rather, in her discretion, the single justice was required to balance the harm to the attorney against the public interest in preventing harm to present and future clients. *Matter of Ellis*, *supra* at 341-342. On this record, imposition of a temporary suspension was well within the proper bounds of her discretion. See *Matter of Schoepfer*, 426 Mass. 183, 187 (1997) ("[I]f the client was deprived of funds [no matter what the attorney intended], the standard discipline is disbarment or indefinite suspension").

*Order affirmed.*