Fecteau, J.
This is an action in contract in which the parties contest the existence of an alleged oral fee-splitting agreement to serve in connection with workers’ compensation cases during which a client discharges one of the above attorney-parties in favor of the other, both of whom had, at times relevant herein, substantial industrial accident business. The plaintiff Allen Rubin commenced this suit seeking a declaratory judgment to determine the rights and obligations of the parties with respect to the attorneys fee earned in one such case (McClellan) in which the defendant’s predecessor in interest, the firm of Ellis & Ellis, had asserted an attorney’s lien under statutory authority. This one claim by the plaintiff has been concluded by the favorable action of the court on his motion for judgment on the pleadings, in effect dissolving the lien.[1] However, the defendant brought a counterclaim, in which the original case, and an amended counterclaim, which included four additional cases, were made the subject of a breach of contract claim as well as alleging a violation of G.L.c. 93A.[2]
The case came on for trial before me, sitting without jury, on September 3-5, 2003. The parties were granted leave until September 12, 2003, to submit requests for findings of fact and/or rulings of law. The matter was taken under advisement at that time.
FINDINGS OF FACT
1. The plaintiff, Allen Rubin (“Rubin”), is a member of the bar and practices law at 333 Park Avenue, Worcester. For the time relevant to this proceeding, he has been engaged, alone and with others, in a general practice with a significant amount of his time devoted to the representation of workers’ compensation claimants. He has been engaged in the practice of law for almost 50 years
2. The defendant, James N. Ellis & Associates, P.C. (“Ellis, P.C.”), is a professional corporation which has been in existence in its present form since July 1997, engaged in the practice of law at 16 Norwich Street, Worcester. It has, apparently, acquired the assets and liabilities of the former law firm of Ellis and Ellis (“Ellis”), a partnership formed in 1986 by James N. Ellis, Jr. and his brother Nicholas Ellis, and who are sons of James N. Ellis, Sr.[3] The latter has been a member of the bar, at present, in excess of fifty years; for many years prior to 1986, he was associated in the practice of law with others (not his sons) and, thereafter, in the several years immediately prior to the formation of Ellis & Ellis, and concurrently thereafter, maintained his practice as a sole proprietorship.[4]
3. Beginning in 1985 or 1986, Ellis & Ellis had begun to accumulate a substantial workers’ compensation practice with several attorneys associated with it as well as many more non-lawyer employees.
4. Both Rubin and Ellis recognized that on occasion, workers’ compensation clients who had first obtained representation by one of the law firms in question, discharged that firm and brought their case to the other. When such change in representation *76 occurred, both Arms consistently wrote letters of successor representation to the other and requested a transfer of the physical file. Such a letter requesting transmittal of the file was always honored and is not at issue herein.
5. On most such occasions, the attorney who was being replaced usually filed with the Division of Industrial Accidents an attorneys lien under the provisions of G.L.c. 221, §50, with a copy sent to the successor firm. During the course of time between approximately 1986 and 1997, there were at least twenty-two clients, four at issue herein, who discharged one of the parties in favor of the other. In every instance in which a client discharged Rubin and retained the Ellis firm, the latter expressed a willingness to share the legal fee on an equal basis, net of the costs incurred by each; on almost every such occasion, a letter was sent from Ellis to Rubin, soon after the change in counsel and often long before any resolution of the claim, that requested transmittal of the file and asked whether Rubin was willing to share the fee on a “50-50" basis. On every occasion, Rubin expressed his agreement to share on such a basis.
6. On those occasions when the client had discharged Ellis and retained Rubin, the latter usually sent a letter to Ellis that informed him of his representation, also signed by the client and requested the file. On those occasions when the client discharged Ellis, Rubin did not discuss, in advance of any settlement of the case, any division of attorneys fees.
7. The case at bar involves the fees earned in four cases, the client in each having left Ellis and hired Rubin: David O’Grady, Wilhelm Huber, Robert Whitfield and Maggie McClellan. The date of injury and date of settlement of each was as follows:
a. O’Grady: date of injury — 7/16/91; date of settlement — 2/7/97;
b. Huber: date of injury — 1/19/95; date of settlement — on or about 9/19/97;
c. Whitfield: date of injury — 10/21/95; date of settlement — on or about 12/19/97;
d. McClellan: date of injury — 4/28/96; date of settlement — 1/21/99.
8. Each of the four cases were resolved before the Division of Industrial Accidents by a lump-sum settlement. In each case, Rubin refused to agree to the demand by Ellis to pay fifty percent of the legal fee earned from the settlement. In those cases, the gross fees earned[5] were as follows: O’Grady — $35,000.00, Huber — $4,000.00, McClellan — $4,000.00, and Whitfield — $5,000.00. By order of the Division of Industrial Accidents resolving the attorney’s lien filed by Ellis in connection with the O’Grady case, that firm received $7,500.00. They have received no other payments on their claim. The amount of fees at issue are 50% of the fees earned by Rubin, namely $2,000.00 with respect to the cases of Huber and McClellan, $2,500.00 on Whitfield and $17,500.00, less the $7,500.00 payment received on account of O’Grady, which claims total $16,500.00.
9. James Ellis, Jr. testified that sometime during 1989 or 1990, while present at the Worcester offices of the Division of Industrial Accidents, he was overheard by Rubin while he was engaged in a discussion with another attorney, unidentified, during which the attorneys were discussing the possibility of an agreement to cover the situation when a client discharged one attorney and hired the other. Ellis said that Rubin sought such an agreement with Ellis as well and that they entered into an oral agreement, at that time, terminable by either party at will, to allow for payment of 50% of the legal fee earned in such an event. Rubin denied having had any such discussion or agreement. Ellis is not believed. Notwithstanding his firm’s practice of sharing, on a 50-50 basis, all fees earned by his firm on cases in which they succeeded Rubin, it was almost invariably the practice of Ellis, on every occasion when a client who had originally hired Rubin moved to the Ellis firm, to ask Rubin if he was “amenable to a 50/50 split with regard to attorneys fees.” No letter of successor representation, nor any other writing introduced into the evidence, ever made reference to any existing or on-going agreement as to the sharing of fees or sought confirmation, expressly or implicitely, that the attorneys were going to adhere to such an arrangement.
10. James Ellis, Jr., is discredited also by the fact that in the original counterclaim at bar, as well as the amended counterclaim filed in April 2002, and supported by an affidavit signed by him, it was alleged that this agreement dated from 1986.
11. Ellis testified that he interpreted this agreement as being terminable at the will of either party but prospective only, meaning the agreement was to be applicable to the settlement of every case that had entered the successor’s office prior to termination and that any termination would only be effective on cases that entered the successor’s office at some time in the future. His interpretation was not based upon discussion with Rubin, however.
11. In each of the four cases in controversy, it was the client’s unilateral decision, unaffected by any suggestion or referral by Ellis, as the discharged attorney, to choose Rubin, the successor. Although similar in effect to a “referral fee,”[6] this purported arrangement was clearly not a referral fee. Here, the evidence did not reveal that there was anything done by the original attorney to facilitate the client’s decision to hire the successor. Ellis did nothing in reliance upon an expectation that Rubin would adhere to this purported agreement; indeed, in all four cases, Ellis acted to protect his interest by the filing of a notice of attorney’s lien with the Division of Industrial Accidents, in spite of the alleged agreement. There was no detrimental reliance, nor any basis for such reliance, *77 by Ellis in the client’s decision to change counsel and to retain Rubin; moreover, there was no understanding by Rubin as successor counsel that his acceptance of the new client carried any obligation to the former attorney, except in recognition of whatever rights Ellis had to a fee in connection with his lien, measured by the value of services performed. There was nothing that Ellis either did or would have done but failed to do, in reliance on any expectation that Rubin would observe this alleged agreement on a case-by-case basis.[7] The credible evidence is that the legal fees were divided on a case-by-case basis often resulting in a 50-50 split. Therefore, even if such an agreement had been entered into, I find that it was terminable by either party on a case-by-case basis, at any time. Certainly by the time of the settlement of the O’Grady case, it became apparent to Ellis, or should have become evident, that whatever agreement he thought he had with Rubin had been terminated. Even in the belief of James Ellis, Jr., that the agreement was terminable by either parly prospectively, the unmistakable conclusion to be drawn is that the fee-sharing in prior cases would not be re-examined upon termination.
DISCUSSION
In order for the plaintiff-in-counterclaim to recover in this action, it must satisfy a burden to prove the existence of a contract between its predecessor and Rubin to share equally the legal fee earned and assessed in the four matters in question. In a contract action the plaintiff has the burden of proof to show the following elements by a preponderance of the evidence: (1) an offer; (2) an acceptance; (3) consideration; (4) breach; and (5) damages. Carney v. New England. Telephone & Telegraph Co., 353 Mass. 158, 164 (1967) (plaintiffs burden to show existence of contract). Evidence of the offer and acceptance must include all essential terms and conditions with which the parties have agreed to be bound, in reasonable detail and certainly. Kaufman v. Lennox, 265 Mass. 487, 488 (1929). “All of the essential terms of a contract must be sufficiently definite so that the nature and extent of the obligations of the parties can be ascertained.” Simons v. Am. Dry Ginger Ale Co., Inc., 335 Mass. 521, 523 (1957), citing Caggiano v. Marchegiano, 327 Mass. 574, 579 (1951).
The plaintiff-in-counterclaim[8] has failed to prove the existence of a contract. Notwithstanding its alleged oral creation, Ellis had frequent opportunities to confirm its existence in writing, which was never done; however, there is a lack of credible evidence that any such agreement was formed. Indeed, the credible evidence shows the likelihood that no such agreement existed between the parties.
Even if such an agreement existed, it is clear that it was “at will,” terminable by either party at any time. The plaintiff-in-counterclaim has failed to satisfy its burden of proof in this matter. Moreover, as there is no credible basis upon which to conclude that the plaintiff-in-counterclaim is entitled to a judgment on the merits of its contract claim, there is likewise no basis to find that Rubin violated G.L.c. 93A. A judgment of dismissal is therefore warranted upon all claims by Ellis.
ORDER FOR JUDGMENT
Based upon the foregoing findings and rulings, a judgment shall enter in favor of Allen Rubin, the plaintiff, defendant-in-counterclaim; the counterclaim, as amended, is ordered dismissed.

 Other liens filed in the four fees contested herein were brought to the Division of Industrial Accidents for resolution. The parties agree that the DIA is without jurisdiction to determine the validity of the contract claim asserted by the plaintiff-in-counterclaim.

 At the conclusion of the evidence, the plaintiff-in-counterclaim waived its claim for fees in connection with the case of Joseph Quintina, as the testimony made clear the fact that said client was not one with whom the firm of Ellis & Ellis had any prior relationship.

 Due to bar discipline commencing on or about July 16, 1997, James N. Ellis, Jr. and Nicholas Ellis were unable to continue in the practice of law, having been temporarily suspended from that date. Each has since resigned from the bar.

 Approximately two months prior to the suspension referenced in footnote 3, James Ellis, Sr. joined the firm as a partner individually while the formalities of the incorporation of James N. Ellis & Associates, P.C. was underway, both steps obviously taken in anticipation of disciplinary actions expected to be taken against James Ellis, Jr. and Nicholas Ellis. See In Re Ellis & Ellis, 425 Mass. 332 (1997), which makes reference to the principals of the firm having been indicted for various offenses by a grand jury in March 1997, and a motion for temporary suspension having been filed by Bar Counsel in April 1997.

 Under workers’ compensation law, the amount of the fee is regulated by statute and is subject to approval by the Division of Industrial Accidents. Since neither party raised any issue regarding the absence of written "contingent fee agreements” and the rights of either to claim under an oral contingent fee agreement in the case of a discharge by a client, no such issues are discussed herein.

 “Referral fee” as used herein, is the custom or practice in use in the profession whereby an originally-retained attorney either retained additional counsel for assistance or was transferring the representation to another attorney, often more expert in a particular specialty, upon the recommendation of the original attorney and approved by the client. See also Rule 3:07 of the Supreme Judicial Court: Rules of Professional Responsibility, Rule 1.5(e), which refers to “division of fee.”

 Ellis makes the argument that had they believed there was no agreement, or had they anticipated that Rubin would either repudiate or deny the existence of an agreement, or terminate it prematurely, they would not have been so willing prior thereto in sharing legal fees equally with Rubin on cases in which they succeeded Rubin. Indeed, Ellis unsuccessfully attempted, on the eve of trial, to again amend its counterclaim to reopen, in effect, all of the prior cases in which Ellis had succeeded Rubin and paid Rubin half of the legal fee. However, they do not explain why they did not make such contentions sooner, when they knew of Rubin’s position on the O’Grady case in early 1997, when it was Rubin who initiated this lawsuit in 1999 regarding one case only, and when in May 2002, that Ellis sought to amend its counterclaim to add only four additional cases to the original case claimed. It was *78 Ellis, after all, who requested in every case, upon its first notice of successor representation to Rubin, that Rubin inform them if he was willing to accept 50% of each fee, a practice that betrays a lack of an agreement. Moreover, given some responses that Rubin made regarding the amount of his effort prior to change in counsel, Ellis should have taken notice sooner of Rubin’s position on the existence of any agreement. Lastly, given the file retention policy of both firms, and the burden of retrieval in those cases for which flies still exist, it is not possible to account for every such case that represented a shared fee between these firms to determine the amount of work performed by each attorney. Many of these cases date back to the late 1980s and early 1990s, and the fees were not sufficiently substantial to warrant the effort to show justification for the sharing of such fees on other than a 50-50 basis. This court gives no credence to such a claim of detrimental reliance.

 Rubin alleges that, given the dissolution of the partnership as of July 1997, this action can only be maintained by all of the partners and, in the absence of all necessary parties, dismissal is required. Given the findings and rulings herein, a ruling thereon is viewed as unnecessary.