## In the Matter of Barbara C. Johnson.

Suffolk. November 6, 2007. - December 5, 2007.

Present: MARSHALL, C.J., GREANEY, IRELAND, COWIN, CORDY, & BOTSFORD, JJ.

*Attorney at Law,* Disbarment. *Contempt.*

A single justice of this court properly entered a judgment ordering the respondent's disbarment from the practice of law for violation of various disciplinary rules by, inter alia, posting on her Web site materials impounded in a care and protection action, where there was no merit to the respondent's challenges to the disciplinary proceedings, namely, that the Board of Bar Overseers violated her constitutional rights in undertaking to discipline her; that she was unduly deprived of a public hearing because of a protective order entered in light of the impounded materials at issue in the proceeding; that the hearing officer wrongly quashed subpoenas that the respondent had issued; and that certain orders of the Juvenile and Probate and Family Courts that the respondent had previously ignored were invalid. [168-171]

In a bar discipline matter, a single justice of this court properly found the respondent in civil contempt for failing timely to comply with certain provisions of a predicate judgment of disbarment, where the respondent was not entitled to ignore the underlying judgment; was not found in criminal contempt by virtue of the judge's order that the respondent be jailed until she purged herself of contempt; and demonstrated neither that the single justice lacked jurisdiction to find her in contempt nor that the contempt judgment was based on the judge's erroneous implicit finding that the respondent had engaged in the unauthorized practice of law. [171-172]

INFORMATION filed in the Supreme Judicial Court for the county of Suffolk on May 16, 2006.

The case was heard by *Spina,* J., and a petition for contempt, filed on September 27, 2006, was also heard by him.

*Barbara C. Johnson,* pro se.

*Susan A. Strauss Weisberg,* Assistant Bar Counsel.

BY THE COURT. Barbara C. Johnson (respondent) appeals from judgments of a single justice of this court disbarring her from the practice of law and finding her in contempt of the judgment of disbarment. We affirm both judgments.

1. *Disbarment.* a. *Background.* Following a hearing on a three-count petition for discipline, a special hearing officer made findings of fact and conclusions of law culminating in a recommendation that the respondent be disbarred. The Board of Bar Overseers (board) adopted those findings and conclusions, and filed an information in the county court recommending disbarment. The single justice adopted the findings and conclusions as adopted by the board and entered a judgment ordering that the respondent be disbarred. The findings and conclusions as adopted by the board are summarized as follows.

i. *Count one.* The respondent owns and maintains a Web site on which she posts information about allegations of child sexual abuse. In 2001, the respondent represented a father in a paternity and custody action in the Probate and Family Court who had been accused of sexually abusing his minor son. The son had also been the subject of a care and protection proceeding in the Juvenile Court. The respondent posted on her Web site information that had been impounded in the care and protection action, e.g., information identifying the son as having been allegedly sexually abused by his father, including the son's full name and photographs of him. The respondent also posted the full names of the son's mother and a half-brother (the product of the mother's partnership with a man whom she married and later divorced); pleadings from the mother's divorce action; and comments by the respondent characterizing the mother as a perjurer who had conceived both children out of wedlock and who had falsely accused both fathers of sexual abuse.

The mother and son filed complaints with bar counsel requesting that the respondent remove the material from her Web site. In addition, a judge in the Juvenile Court ordered the respondent to return any impounded material to the court and remove all references to that material from her Web site. The respondent ignored the court orders. A subsequent order by a judge in the Probate and Family Court declared that the materials filed in that action were also impounded.

The board adopted the hearing officer's conclusions that by engaging in the foregoing activities, the respondent violated Mass. R. Prof. C. 3.4 (c), 426 Mass. 1389 (1998); Mass. R. Prof. C. 4.4, 426 Mass. 1405 (1998); and Mass. R. Prof. C. 8.4 (d) and (h), 426 Mass. 1429 (1998).

ii. *Count two.* In 1999, the parents of a mentally retarded adult daughter paid the respondent a $10,000 retainer to represent them in connection with criminal and protective services proceedings arising from allegations that the father had sexually abused his daughter. The respondent deposited the retainer in her personal account rather than in a trust account. The clients subsequently discharged the respondent and requested a refund of a portion of the retainer. The respondent refunded less than the clients had expected. When the clients disputed the amount of the refund, the respondent failed to place the disputed sum in a trust account. Thereafter, the clients filed a complaint with bar counsel.

In 2002, the respondent posted on her Web site the identities of her former clients and their daughter without their permission; details of the sexual abuse allegations; and information regarding the fee dispute. The clients demanded that the respondent remove the information from her Web site. In a telephone message, the respondent said that she might remove the information but only if the clients withdrew their complaint with bar counsel.

The board adopted the hearing officer's conclusions that by engaging in the foregoing activities, the respondent violated Mass. R. Prof. C. 1.6 (a), 426 Mass. 1322 (1998); Mass. R. Prof. C. 1.9 (c) (1) and (2), 426 Mass. 1342 (1998); Mass. R. Prof. C. 1.15 (a) - (c), 426 Mass. 1363 (1998); Mass. R. Prof. C. 1.16 (d), 426 Mass. 1369 (1998); Mass. R. Prof. C. 8.4 (c), (d), and (h), 426 Mass. 1429 (1998); and S.J.C. Rule 4:01, § 10, as appearing in 425 Mass. 1313 (1997).

iii. *Count three.* In 1995, in connection with representing a plaintiff in a wrongful termination action in the District Court, the respondent filed motions for leave to depose nonparty witnesses out of the presence of defendants' counsel. The judge denied the motions, found that they lacked a legal or factual basis and were filed in bad faith, and ordered that the respondent or plaintiff pay the defendants' legal fees incurred in opposing the motions. When the payments were not made, the judge imposed civil penalties on the respondent and found the respondent and the plaintiff in contempt, warning them that failure to pay the fees would lead to dismissal of the plaintiff's

action. Following further nonpayment, judgment entered dismissing the plaintiff's action and ordering costs to be paid to the defendants. The respondent did not file a notice of appeal following the dismissal but filed a motion for retransfer of the case to the Superior Court. The motion was struck with instructions to the respondent that an appeal from the dismissal was the proper avenue of relief. Following the entry of an amended final judgment dismissing the plaintiff's action, the respondent again sought to retransfer the case to the Superior Court rather than appeal from the dismissal; the request for retransfer was again struck. The respondent filed a notice of appeal from the order striking the motion for retransfer. The Appeals Court dismissed the appeal as frivolous.

Meanwhile, the judge in the District Court, following reconsideration of his earlier judgment of contempt against the respondent, entered a final judgment of contempt against her. She appealed and the Appeals Court affirmed the judgment. *HMM Assocs., Inc.* v. *Johnson*, 44 Mass. App. Ct. 1126 (1998). Thereafter, the District Court judge gave the respondent a deadline for paying the outstanding fees and penalties, warning her that failure to comply would result in further penalties and referral to the board. The respondent violated the order. Following a hearing, the judge held her in continuing contempt and ordered her jailed until she purged herself of contempt. The respondent did not appeal from those orders, but the following day she purged herself of contempt and was released.

The board adopted the hearing officer's conclusions that by engaging in the foregoing activities, the respondent violated Mass. R. Prof. C. 3.4 (c); Mass. R. Prof. C. 8.4 (d) and (h); S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (5) and (6), as appearing in 382 Mass. 769 (1981); Canon 6, DR 6-101 (A) (1) - (3), as appearing in 382 Mass. 783 (1981); and Canon 7, DR 7-101 (A) (3), as appearing in 382 Mass. 784 (1981).

b. *Discussion.* The respondent raises constitutional, procedural, and substantive challenges to the disciplinary proceedings. We address them in turn.

i. The respondent claims that, under a "class of one" theory, see *Willowbrook* v. *Olech*, 528 U.S. 562, 564 (2000), the board violated her right to equal protection under the Fourteenth

Amendment to the United States Constitution by improperly singling her out for discipline while failing to pursue disciplinary action against other attorneys involved in the underlying cases. Generally, "[w]hether bar counsel pursues discipline of others is irrelevant . . . to the respondent's current disciplinary action." *Matter of Tobin*, 417 Mass. 92, 103 (1994). Moreover, the respondent fails to point to any evidence adduced before the board showing that she was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Willowbrook* v. *Olech, supra.* Cf. *Matter of Cobb*, 445 Mass. 452, 479 (2005) (no support for attorney's claim that bar counsel vindictively sought to punish him for reporting acts of judges). We need not address the respondent's bald accusation — unsupported by anything in the record of this case — that the disciplinary process suffers from inherent bias, nor do we address other claims in which she seeks merely to incorporate arguments from prior memoranda. See *Matter of London*, 427 Mass. 477, 483 (1998).

ii. The respondent argues that the board chair improperly allowed bar counsel's motion for a protective order in connection with the disciplinary proceeding. The respondent failed to challenge the order. See S.J.C. Rule 4:01, § 20 (4), appearing in 425 Mass. 1302 (1997); Rule 3.22 (c) of the Rules of the Board of Bar Overseers (2007). In any event, the protective order was appropriately entered where impounded material was at issue in the disciplinary proceeding. Consistent with the protective order, the hearing officer instructed the parties to use pseudonyms during the hearing. When the respondent repeatedly violated the protective order by using the parties' real names, the hearing officer properly cleared the public from the forum.[1] In such circumstances, the respondent cannot be heard to complain about being deprived of a public hearing.

iii. The respondent contends that the hearing officer wrongly quashed subpoenas that the respondent had issued on her own,

[1]With members of the public gone, the respondent refused to participate in the hearing and left. The hearing officer considered the matter solely on documentary evidence submitted by the parties (exhibits submitted by bar counsel and the respondent's amended answer to the petition for discipline). The respondent was furnished with copies of bar counsel's exhibits and transcripts of the hearing, which she used to prepare her appeal to the board.

arguing that she was entitled to issue them under G. L. c. 233, § 8. We need not decide whether the statute applies to bar discipline proceedings because the hearing officer properly quashed the subpoenas on grounds of irrelevance: through the subpoenaed witnesses, the respondent had sought to relitigate issues in the underlying cases and attack the disciplinary process itself. See *Matter of Tobin*, *supra* at 102-103 (refusal to issue subpoenas appropriate where attorney sought to relitigate underlying matters in disciplinary proceeding).

iv. With respect to count one, the respondent claims that she cannot be disciplined for having posted impounded material on her Web site for the following reasons: (1) the Juvenile Court orders were invalid because she never obtained material from the care and protection proceeding and thus never posted impounded material from that case; (2) the Probate and Family Court order was invalid because material related to the paternity and custody matter was open to the public pursuant to G. L. c. 209C, § 13, as appearing in St. 1998, c. 64, § 229; (3) her Web site postings are protected by the First Amendment to the United States Constitution; and (4) there was insufficient evidence to conclude that she had posted confidential information with no substantial purpose other than to embarrass the third parties involved — she claims that she intended only to educate the public about her client's plight. The problem with the first three claims is that the respondent neither sought to appeal from nor otherwise legally challenge the courts' orders, and she was not free to ignore them and challenge them for the first time in the disciplinary proceeding.[2,3] See *Florida Bar* v.

[2]While the respondent claims that she filed a petition in the county court seeking relief from the order entered in the Probate and Family Court, she has shown neither that she actually filed such a petition nor that, if she had, she obtained any relief; she was not free to disobey the order. See *Florida Bar* v. *Wishart*, 543 So. 2d 1250, 1252 (Fla. 1989), cert. denied, 493 U.S. 1044 (1990).

[3]With respect to count two, we reject the respondent's claim that her posting of confidential information about her former clients was protected under the First Amendment to the United States Constitution. Whatever rights she may have had to "defend herself against false accusations" regarding the fee dispute, those rights did not include publishing highly sensitive personal information regarding allegations that the father had sexually abused his mentally retarded daughter.

*Gersten,* 707 So. 2d 711, 713 (Fla. 1998); *Florida Bar* v. *Rubin,* 549 So. 2d 1000, 1003 (Fla. 1989); *Florida Bar* v. *Wishart,* 543 So. 2d 1250, 1252 (Fla. 1989), cert. denied, 493 U.S. 1044 (1990). As for the fourth claim, it was reasonably inferable from the mother's having complained to bar counsel about the respondent's postings that the mother was embarrassed by them. Moreover, the respondent went far beyond merely educating the public about her client's case — she violated the confidences of third parties by publicizing information that she knew was impounded. See *Matter of Comfort,* 284 Kan. 183, 191-195 (2007) (under disciplinary rule identical to Mass. R. Prof. C. 4.4, court held that objective evaluation of conduct would lead reasonable person to conclude that publishing of disparaging information about third party was done for no substantial purpose other than to embarrass).

c. *Sanction.* "We do not conclude, and the respondent makes no argument, that the sanction imposed by the single justice is 'markedly disparate' from sanctions in similar cases." *Matter of Tobin, supra* at 103. Cf. *Matter of Cobb, supra* at 479.

2. *Contempt.* Pursuant to a petition filed by bar counsel and following a hearing, the single justice found the respondent in civil contempt for failing timely to comply with the following provisions of the judgment of disbarment: close her IOLTA account, give notice of her disbarment, and submit an affidavit of compliance pursuant to S.J.C. Rule 4:02, § 17, as amended, 426 Mass. 1301 (1997). He ordered her jailed until she purged herself of contempt, which she did four days later and was released.

We reject the respondent's challenges to the contempt judgment as follows. (a) She was not entitled to ignore the underlying judgment of disbarment on the ground that it was "transparently invalid"; that she needed to fulfil her clients' right to counsel of their choice; or that she had a property interest in continuing to receive fees from her clients. She presents no persuasive factual or legal grounds to substantiate any of those claims. (b) The respondent's argument that she was found in criminal rather than civil contempt because she did not "hold the key to the cell door" (and that she was denied the right to a jury trial for criminal contempt) is belied by the fact that she eventually complied with the terms of the judgment of disbar-

ment and was released.[4] (c) We reject the respondent's claim that the single justice lacked jurisdiction to find her in contempt where she had appealed from the disbarment judgment. She had moved unsuccessfully for a stay of the judgment pending appeal. The cases relied on by the respondent — a criminal case holding that an appeal divests a lower court of jurisdiction to rule on motions "to rehear or vacate," *Commonwealth* v. *Cronk*, 396 Mass. 194, 197 (1985), and a divorce case holding that, absent a specific order to the contrary, a husband's obligation to make installment payments pursuant to a judgment dividing marital property was stayed by the husband's appeal, *Huber* v. *Huber*, 408 Mass. 495, 499-500 (1990) — are inapposite. Here the single justice merely acted to enforce the disbarment judgment. Cf. Mass. R. Civ. P. 62 (a), as amended, 423 Mass. 1409 (1996). (d) Finally, the respondent's argument that the single justice erred in "implicit[ly]" finding that she had engaged in the unauthorized practice of law is misplaced because the finding of contempt was based on other violations of the terms of the judgment of disbarment.[5]

*Judgments affirmed.*

---

[4]Generally, a civil contempt proceeding is " 'remedial and coercive,' intended to achieve compliance with the court's orders," while a criminal contempt proceeding is "exclusively punitive. It is designed wholly to punish an attempt to prevent the course of justice." *Furtado* v. *Furtado*, 380 Mass. 137, 141 (1980), quoting *Cherry* v. *Cherry*, 253 Mass. 172, 174 (1925), and *Blackenburg* v. *Commonwealth*, 260 Mass. 369, 373 (1927). See *Matter of De-Saulnier (No. 3)*, 360 Mass. 769, 772-773 (1971), quoting *Shillitani* v. *United States*, 384 U.S. 364, 368 (1966) (discussing features of criminal contempt, including that contemnor does not hold "the keys of . . . [his] prison in . . . [his] own pockets"); *Commonwealth* v. *Raczkowski*, 19 Mass. App. Ct. 991, 992 (1985), and cases cited (constitutional right to jury trial attaches to certain criminal contempts but not to civil contempts).

[5]Both parties have filed motions regarding the proper scope of the record on appeal, and the respondent has filed motions that repeat or add to arguments that she raised in her briefs. We have considered only those materials that were part of the record below and decline to address legal arguments not raised in the respondent's briefs.